## HUDSON vs. HELMES' EXECUTORS.

1. The Court of Probate can only authorize a public sale by a guardian in the manner prescribed by the statute ; a private sale under an order of the court, though sanctioned by the court, passes no title as against the ward.

2. If a guardian sells his ward's property at private sale, he is guilty of a conversion, and is chargeable on final settlement with the value of the property at the time of the conversion or of settlement, or at any intermediate time, and interest on that value from the time of conversion.

ERROR to the Court of Probate of Franklin.

THE defendants in error, who are the executors of Jeremiah S. Helmes, deceased, were cited before the Court of Probate to make a final settlement of their said testator's guardianship of James B. Hudson, the plaintiff in error. Both parties excepted to the rulings of the court, and the record contains two bills of exceptions ; but as Hudson only has sued out a writ of error, and assigns errors in this court, it is only necessary to state the facts disclosed in his bill. They are as follows :

"The ward, James B. Hudson, introduced witnesses who proved that the guardian, J. S. Helmes, and John D. Inman,

71

sold a negro man slave, Peter, the property of the ward and the other distributees, at private sale, for and at the price of $486 50, and that said Helmes was admonished, before said sale, not so to dispose of the property; witness himself offered $500 for the boy, and now states in court that he would have given $800 for him, and that he is a smith now worth $1000. It is also proved that the hire of said boy was worth at least $150 a year, on an average, from 1844 to this time inclusive; and that James B. Hudson, when he assented to the sale, was a minor under the age of twenty-one years. Much proof was also introduced, showing that Peter was a young man, about twenty-two years of age, of bad character, a blacksmith by trade in the whitesmith department of that line of business; had nine skeleton keys in his possession, and had entered into the store-house of John Sevier and stolen goods therefrom by night; was threatened with a prosecution, and witness thought, under all the circumstances, from $500 to 600 would do as his value at day of sale; that Helmes, the guardian, with Inman, one of the distributees, sold said boy for $503 50, to said John Sevier, on the 10th April, 1844, understanding that said Sevier was to carry the slave out of this State, and allowed Sevier the supposed value of the goods Peter had stolen from him, thus reducing the amount realized to $486 50; that Peter was of bad character, and was carried to Tennessee by said Sevier, and disposed of there. Sevier said the negro would now be worth about $700.

" Under this proof, the said Hudson, by his counsel, insists that the court should charge said Townes and Nooe, executors of said Helmes, and as such, with the hire of Peter as proved, from the time of said sale to this date, with interest on each year's hire; and that they should also be charged with the present value of Peter, which they insist is $1000; which the court declines to do, but charges the said executors with the sum of $700, as of the said day of sale, and interest to this date; to all of which rulings the said Hudson here now excepts."

The order of sale under which the negro was sold, dated March 21, 1844, is as follows:

" John D. Inman, in right of his wife, late Mary Hudson, and J. S. Helmes, guardian for John B. Hudson and James B. Hudson, filed their petition for the sale of a negro boy, Peter,

belonging to said heirs, for distribution; which petition being read and understood by the court, it is ordered that John D. Inman, in right of his wife, and J. S. Helmes, guardian, &c., be and they are hereby authorized to sell a certain negro man slave, named Peter, belonging to the estate of John F. Hudson, late of said county, deceased, and that they make due return to this court of such sale."

The executors returned an account of the sale, showing that the slave was sold for $503 50, and it was ordered by the court that the account of sales rendered be received and admitted to record.

The errors assigned are as follows :

" The court erred in not charging Helmes' executors with the full value of the slave Peter, as proven, of $1000, at day of settlement in that court, with interest on that sum from the time of said sale; and that the court should, in like manner, have charged said executors, as such, with the hire of Peter, as proven, at $150 per year, from the sale to the settlement, with interest on the same.

" That the court erred in only charging said defendants in error with $700, as the value of Peter, and interest on that value from the date of the sale and conversion by Helmes."

The defendants in error also move to dismiss the writ of error, because the plaintiff has coerced by execution the payment of the amount decreed in his favor.

Wm. Cooper, for plaintiff in error :

The sale was unauthorized and void, and did not divest the wards of their property in the slave.—Clay's Digest 223 § 13, 224 § 14 ; Hopper v. Steele, 18 Ala. 828; Swink v. Snodgrass, 17 Ala. 655 ; Martin v. Williams, 17 Ala. 190; Weir v. Davis, 4 Ala. 442; Dearman v. Dearman, 4 Ala. 526; Fambro v. Gantt, 12 Ala. 305; Ventress v. Smith, 10 Peters 161. If the sale did not divest the title of the wards, they had a right to demand him at the day of settlement, and, if he was not forthcoming, to have his hire to that time and his then value. Suppose the wards had sued in detinue; nothing could have defeated their right to recover both the hire and value at that date.

It is insisted by the adverse counsel, that the sale was au-

thorized by the order of court, and that the purchaser need not go behind the order; and Cole v. Connolly, 16 Ala. 280, is cited to sustain the position. That case does not sustain the position, and, if it did, would be overruled by the cases above cited; it is conceded there that there is a wide distinction between void and voidable orders and decrees, and 10 Peters 449 is cited. In this case, the pretended sale was never confirmed, the return was only ordered to be "received and recorded."

Where an executor, administratior or guardian, without authority, works the slaves, and cultivates the lands of the estate, the distributees have a right to the hire and rents or the crops, and they may elect which they will take.—Steele v. Knox, 10 Ala. 608, 613, and cases there cited.

The ward is entitled to the highest value of the property at any time from the day of sale to the day of settlement, because, if it had not been wrongfully withheld on the settlement, the ward would then have the property itself.—Clark & Clark v. Penny, 7 Cowen's R. 681; West v. Wentworth, 3 ib. 82; Shepherd v. Hampton, 3 Wheat. 200; Gainsford v. Carroll, 2 Barn. & Cress. 624; 2 East 211; 2 Taunton 257. Even in actions of trover, the plaintiff is entitled to the highest value to date of trial.—Ewing v. Blount, 20 Ala. 694; Tatum v. Manning, 9 Ala. 144; Lee v. Matthews, 10 Ala. 682.

JOHN A. NOOE, contra :

Admitting that the order of sale was erroneous, yet, having been granted by a court of competent jurisdiction, it cannot be impeached or called in question collaterally.—Herbert v. Hanrick, 16 Ala. 592; Cole v. Connolly, 16 Ala. 280.

The distributees had no claim on the administrator for hire after the sale; for, according to the case last above cited, the purchaser got a good title, and when their claim to the negro ceased, their right to hire ceased also as a necessary consequence.

The plaintiff in error should not complain, as he received no injury. The administrator presented to the court a good and legal cause to authorize an order of sale; if the sale had been public, there would have been no cause of complaint whatever. Did plaintiff in error, then, suffer any injury by the private sale, when the administrator was charged with the amount for

which the slave would probably have sold publicly? This amount was all that he could be charged with under any circumstances.—Weir v. Davis, 4 Ala. 446 ; Steele v. Knox, 10 Ala. Rep. 615.

PHELAN, J.—A guardian, by the common law, had the right to the custody and management of the personal chattels of his ward, but had no title in them. His office, in this respect, differed from that of an executor or administrator, as being an agency only not coupled with an interest ; and this agency did not ordinarily extend to the power to make sale of them.

But the rights both of guardians and executors to make sale of the property, whether real or personal, of wards and minors, are now wholly regulated by statute in this State. They are not allowed to sell, except under an order of the Probate Court, and then the time and manner of that sale is specially prescribed; and as to sales by executors or administrators it is expressly declared by statute, that they shall be utterly null and void if made in any other way.—Clay's Dig. 223-24 § § 13, 14.

It is clear that the interest of his ward, James B. Hudson, could not be lawfully sold by Helmes, the guardian, at private sale, although there was an order for a sale granted by the Orphans' Court. The court had no power to authorize a private sale. So far, then, as plaintiff in error was concerned, the sale of his interest in the slave Peter, made by his guardian Helmes privately, in conjunction with Inman, stands upon the same footing as it would if there had been no order of sale. It passed no title as against the ward.—Lay's Executor v. Lawson's Adm'r, at this term.

What then is the nature of a guardian's liability, who, without lawful authority, makes sale of his ward's chattels? His act is nothing different from that of any other bailee, who, having the rightful custody or possession of the goods or chattels of another for one purpose, converts them to another purpose, or sells or destroys them. The act is in law a *conversion*, and his liability a liability to pay damages commensurate with the nature and extent of that conversion. If a guardian were removed for such an act, as ordinarily he would be, and the ward should sue him on his bond or in any action of trover and con-

version, the measure of damages which he would be entitled to recover, in either case, would be the value of the property converted, with interest from the time of the conversion. This would not be the whole extent of the infant's rights, it is true. If the property remained in specie, he might recover it immediately from the holder by suit in detinue through a *prochein ami*, or he might do this by suit in his own name simply after coming of age, even after a lapse of years; or he might sue the holder in detinue, and the guardian in trover, and take in satisfaction whichever judgment he liked best.

But in this case the ward prefers to let his guardian remain in office for years after this act of conversion, and then calls him to a settlement. What, under such circumstances, is the rule which will do justice between the parties? It is, as we conceive, to treat the sale of the slave as a conversion, and charge the guardian with his value, as the court in its discretion may think proper, either at the time of the conversion, or of the settlement, or any time between, and interest on that value from the conversion. To make the guardian pay his value at the time of the settlement, and pay hire for him up to that settlement, with yearly interest on hire, as plaintiff in error claims to do, would be to make the guardian the insurer of the life of the ward's slave until the ward chooses to call him to a settlement, and then at the option of the ward to be made his purchaser.— There would be no safety for guardians, and ordinarily no justice, in such a rule; for many times it might happen that sales, which were not formal and legal, would be made in good faith, and prove greatly advantageous to the ward. Indeed there is nothing in the facts of this case, when fully considered, that would lead to the belief that the guardian did not act in perfect good faith so far as the ward was concerned. It appears that there was an adult equally interested with the minor, who partly conducted the sale of the slave Peter.

As the Probate Court made the guardian pay $700 for Peter, when he only sold for about $500, it seems to us that full justice was done to the minor under all the circumstances of the case. The rule adopted by the court below has been already sanctioned by one decision of this court.—Alexander v. Alexander, 8 Ala. 796.

The judgment below is affirmed.

The motion of defendant in error to dismiss the writ of error, we did not deem it important to decide, as the case was found to be with him on the errors assigned.