## HENDERSON *vs.* SEGARS ET AL.

[BILL IN EQUITY BY CESTUIS QUE TRUST AGAINST TRUSTEE TO SET ASIDE SETTLEMENT AND COMPEL ACCOUNT OF TRUST.]

1. *Estoppel against trustee by acceptance of trust.*—A trustee for a married woman and her children, under appointment from the chancery court, knowing at the time of his acceptance that the deed creating the trust was fraudulent as to creditors, assumes all the duties, liabilities and disabilities which attach to ordinary trustees, and is estopped from setting up against the beneficiaries the claims of creditors, or his own claims as surety of the debtor.

2. *Settlement of trustee set aside on objection by beneficiaries.*—If such trustee sells the trust property under a power of attorney from the wife, applies the proceeds

of sale, with her consent, to the payment of the debts on which he was bound as surety, obtains her receipt showing that the proceeds had been applied for her support, and uses it as a voucher on the settlement of his trusteeship,—equity will not recognize such an execution of the trust, but will set aside the settlement on the application of the beneficiaries; and the trustee will be held estopped from insisting that the proceeds were applied as the court, on a proper application, would have directed.

3. *Construction of trust deed.*—A deed conveyed certain slaves to a trustee "for the support and maintenance" of a married woman "and her children during her life, and at her death to become the absolute property of her children", with power to the trustee, if he at any time should deem it necessary, to sell any portion of the property, and to apply the proceeds to the support and maintenance of the beneficiaries. On bill filed by the beneficiaries against the trustee, the record did not show that the husband had ever claimed his wife's interest in the property; and the court cited Hill and Wife v. McRae, 27 Ala. 175, as indicating their views with respect to the wife's interest.

APPEAL from the Chancery Court of Pike.

Heard before the Hon. WADE KEYES.

The material facts of this case, as disclosed by the pleadings and proof, may be thus stated : On the 8th September, 1843, one William B. Darby executed a deed to his brother, Jeremiah Darby, by which, in consideration of natural love and affection for his niece, Sarah Eliza Hanchey, he conveyed a negro woman and her children to said Jeremiah, in trust for the support and maintenance of the said Sarah and her children; and the deed contained the following provisions: "Said property is to be held by the said Jeremiah Darby in trust for the maintenance and support of the said Sarah, during her natural life, and the heirs of her body, should any be begotten; and, at the death of the said Sarah, the same is to be divided equally and proportionally between her children, should she have any. To have and to hold the aforesaid property, to him, the said Jeremiah Darby, and his heirs, in trust, however, for the use and maintenance hereinbefore named. And it is hereby understood by these presents, and expressly declared, that the aforesaid property is to be held by the said Jeremiah Darby in trust for the use of the said Sarah and her children, should there be any, during the life of the said Sarah; and at her death, the same is to vest absolutely, and become the absolute property of the children of the said Sarah, which she may hereafter have by the said

John Hanchey, and the legal heirs of such as may be deceased, to be by them held and enjoyed forever. And it is further understood, that if, during the life of the said Sarah, it should become necessary, in the view of the said Jeremiah Darby, to sell off a part, or the whole of said property, for the benefit and maintenance hereinbefore named, then, and in that case, it shall be lawful for the said Jeremiah Darby to dispose of a part or all of said property, at public or private sale, and apply the proceeds arising from such sale to the use hereinbefore named; and should the said Jeremiah Darby deem it necessary, during the life of the said Sarah, to dispose of said property, or a part thereof, it shall be lawful for him to execute titles to the purchaser in his own name, thereby barring the interest of the said Sarah and her children in said property, which they may have either in law or equity. In witness whereof", &c.

At the time this deed was executed, William B. Darby, the grantor, had no title to the slaves conveyed, nor did he have possession of them; but the slaves belonged to Wiley White, who was the father of the said Sarah, and who made a fraudulent sale of them to the said Darby, in order that the latter might convey them by deed to said Sarah,—the whole transaction being a scheme to defraud said White's creditors, and this fact being known to the said Sarah at the time. The trustee named in the deed, after his acceptance of the trust, became insane, and was removed by the chancery court; and on the 21st October, 1845, said court, on the application of Mrs. Hanchey, appointed Eli Henderson as trustee, in his stead, who thereupon accepted the trust, and entered into bond. At the time said Henderson accepted the trust, he was privy to the fraud attending the transaction, and the negroes had been privately removed to Arkansas, with his knowledge, to avoid the debts of said Wiley White.

On the 8th November, 1845, Mrs. Hanchey, whose husband had previously died, executed to Henderson a power of attorney, authorizing him to go to Arkansas and sell the negroes, and to apply the proceeds to the payment of White's liabilities on his official bond as sheriff, on which Henderson was bound as surety. Henderson accordingly went to Arkansas, took possession of the negroes under the power of

attorney, carried them to Mississippi, and there sold them for $700, which was about the average market price of slaves. With this money he returned to Alabama, and Mrs. Hanchey then gave him a receipt for the amount, acknowledging that it had been applied according to the provisions of the deed of trust; but, at the time this receipt was given, Mrs. Hanchey knew that the money was to be applied to the payment of White's liabilities as sheriff, and consented thereto, and Henderson accordingly so applied it.

In December, 1846, Henderson applied to the court for a final settlement of his trusteeship, and a final settlement was made in November, 1847. On this settlement, Henderson charged himself with the $700 realized from the sale of the negroes, and obtained credit for the amount specified in Mrs. Hanchey's receipt, and then resigned his trust; but there was no order discharging him by the court.

In June, 1851, Mrs. Hanchey, having intermarried with Hugh R. Segars, filed her bill in chancery, by her said husband as next friend, against said Henderson, praying that said final settlement and receipt might be set aside and held for naught, that an account might be taken of the trust property which had come to the hands of Henderson as trustee, that he might be removed from the trusteeship, and her husband appointed in his stead; and the prayer for other and further relief was added. The bill alleged the execution of the deed of trust, the removal of the first trustee, the appointment of Henderson, and his acceptance of the trust; that complainant consented to his sale of the negroes, on his representations that it was necessary for her support; that he applied the proceeds of sale to the payment of liabilities against himself and others, and afterwards, by repeated importunities, and by taking advantage of his confidential relation, obtained from complainant the receipt which he used as a voucher on the settlement of his trusteeship, and thereby obtained credit to the amount therein specified.

An amended bill was afterwards filed, bringing in as parties complainant Hugh R. Segars, in right of his said wife, Mary A. Segars, an infant daughter of said Hugh R. and Sarah E. Segars, and John W. Hanchey, a minor son of said Sarah and her first husband.

The defendant answered the bill; admitting his acceptance of the trust, and all the other material facts alleged; setting up the final settlement and receipt, and the original fraud in the execution of the deed, in bar of the relief sought by the bill; and demurring for want of equity.

The chancellor rendered a decree in favor of the complainants, which is now assigned for error.

NAT. HARRIS, for the appellant:

1. If all the complainants are not entitled to relief, the bill must be dismissed.—Moore v. Moore, 17 Ala. 631; Wilkins v. Judge, 14 ib. 137.

2. Under the terms of the deed, Mrs. Segars did not take a separate estate in the slaves, but her husband (Hanchey) took an estate in them during her life; and Mrs. Segars, therefore, was not entitled to any decree against the appellant.—Lamb v. Wragg & Stewart, 8 Porter, 73; Cook v. Kennerly & Smith, 12 Ala. 42; Pollard v. Merrill & Eximer, 15 ib. 169; Strong v. Gregory, 19 ib. 146; Bender v. Reynolds, 12 ib. 446; Gayle v. Br. Bk. at Mobile, 21 ib. 414.

3. But, if Mrs. Segars took a separate estate in the slaves, then, after the death of her first husband, she had the undoubted right to dispose of her separate estate in any manner she thought proper, and a court of equity would have compelled the trustee to hold her interest for the use of her alienee.—Greenleaf's Cruise, m. p. 448. Even if she had been a *feme covert* at the time she authorized the appellant to dispose of the property, she would have had the right to make such a disposition of her interest in it, if she chose.—Hooper v. Smith, 23 Ala. 639; Bradford and Wife v. Greenway, Henry & Smith, 17 ib. 800.

4. The evidence shows that the negroes conveyed by the deed were liable for the debts of White, that the proceeds of their sale were applied to the payment of his debts, and that Mrs. Segars, with a full knowledge of the application of the money, and after she had consulted counsel, signed the receipt set up by the appellant. The proceeds of sale were thus applied as the law, upon a proper proceeding being had for the purpose, would have decreed their application; and the trustee was authorized to make such an application, since the law

would have compelled him to make it.—Elliott v. Horn, 10 Ala. 348. Mrs. Segars cannot now object to the application.

JAMES E. BELSER and JAMES L. PUGH, *contra:*

1. The deed executed by Darby created a separate estate in Mrs. Segars, so far as her husband was concerned.—Hill and Wife v. McRae, 27 Ala. 175; Rugely v. Robinson, 10 *ib.* 703; 2 Beavan, 63; 3 *ib.* 20; 3 Hare, 185; 1 Leigh, 443.

2. The estate of the wife was inalienable. The only right she had was to a support out of the property during her life, the *corpus* of the property being given to her children after her death. This right to a support was not capable of being identified and separated from that of the other *cestuis que trust.* How could a creditor or purchaser reach it, or ascertain and set apart the extent and amount of it? A conveyance of such an interest must be inoperative, since the subject-matter is so locked up and hedged in as to be incapable of separation without prejudice to the rights of others.—Spear v. Walkley, 10 Ala. 328; 12 *ib.* 652; Andrews v. Hobson, 23 *ib.* 219; Hill and Wife v. McRae, 27 *ib.* 175.

3. If Hanchey ever had any interest in the negroes, under the deed, that interest was merged by his death.—4 Leigh, 550; 11 Humph. 425; 2 Swan, 460.

4. The trustee, by accepting the trust, incurred all the responsibilities which attach to the relation of trustee and *cestui que trust,* and is held to the validity of the deed as a *bona fide* conveyance.—Godwin v. Yonge, 22 Ala. 553; Andrews v. Hobson, 23 *ib.* 219; 7 *ib.* 652; Roden v. Murphy, 10 *ib.* 804; Marler v. Marler, 6 *ib.* 367; 1 Vesey, sr., 522.

5. The receipt is open to explanation, and does not estop the complainant.—Johnson v. Johnson, 5 Ala. 95; Saunders v. Hendrix, 5 *ib.* 225; McCravey v. Remson, 19 *ib.* 430; Ware v. Cowles, 24 *ib.* 449; 9 B. & C. 577; 6 Pick. 445.

CHILTON, C. J.—There can be no doubt of the fact, so clearly shown by the proof, that the arrangement by which the slaves mentioned in the bill were conveyed in trust to Jeremiah Darby, for the support and maintenance of Mrs. Segars and her children, was intended to defraud the credi-

tors of Wiley White. It seems to have been a sort of family arrangement to screen the property from liability to White's debts, and with which the parties concerned were well enough satisfied until these debts were pressed as against them, when the idea of an honest application of the proceeds of the slaves occurs for the first time.

The law wisely ordains that a man shall not take advantage of his own wrong, and, as a check upon frauds of this kind, it allows the defrauded creditors to pursue the property in the hands of the fraudulent vendee, and as to them regards the fraudulent transfer or arrangement, by which it is attempted to divest the title of the debtor, as though it had never been made; but as to the parties to the fraud, they are bound by it.

In the case before us, the appellant voluntarily made himself a party to this deed, by accepting the title as trustee, and entering into bond and security for the faithful execution thereof. He was apprised of the condition of the property,— knew that it was in Arkansas, whither it had been run in furtherance of the fraudulent scheme; and having thus made himself a party, and pending the obligation which he had assumed as the executive agent of the court of chancery to carry out the trust, it was not competent for him to set up the claims of creditors, or any claim of his own as a creditor or surety for White, as antagonistic to the trust. He was effectually estopped by reason of the relation he voluntarily assumed.

The deed being valid as to him, all the duties, liabilities, and disabilities which attach to ordinary trustees, at once were devolved on him.

But it seems, liabilities as surety upon White's bond as sheriff were fixed by judgments upon him, and he becomes interested in making this property available in their payment. To this end, he obtained a power of attorney from complainant to sell the slaves,—sold them, four in number, for seven hundred dollars, and applied the proceeds towards the payment of the debts for which he was bound, and obtained from the complainant a receipt, showing that the proceeds had all been applied to her support. This receipt he filed as a voucher in the chancery court, which appointed him

trustee. A settlement was thereupon predicated, and he resigned his trust.

We cannot, for a moment, recognize *such* an execution of a trust. The trustee merely uses it as a guise to serve his own selfish purpose. So far from executing the trust, as his vouchers assert, his sole effort has been effectually to defeat it. The position, that the proceeds have gone where a court of chancery would have placed them, is fully met by the fact, that the appellant is estopped from saying this; for he cannot set up a claim in opposition to the trust. He has said, that the trust was *bona fide* and honest, by accepting it, and he shall not now avail himself of the relation of trustee, and the influence and opportunities it affords, to defeat the trust upon the ground that it was dishonest and fraudulent.—Godwin v. McGehee, 22 Ala. Rep. 553.

But, it is said, the complainant not only consented to the sale, but, with a full knowledge of all the facts, authorized the proceeds to be thus appropriated. To this we say, the deed requires the *corpus* to be retained by the trustee for the support and maintenance of Mrs. Segars and her children, and for this purpose only. She then had a child born, who was one of the beneficiaries under the deed, as the trust opens and lets in the after-born children of Mrs. S. The profits of the entire *corpus* may be needed for the support of the children, even if none of it was required by their mother for her support. The sale was therefore a conversion; and since, under the circumstances, the purchaser acquired a good title, as against these parties, if he purchased *bona fide*, the proceeds must stand as the *corpus*, and be held in trust for the purposes expressed in the deed. Aside, however, from this consideration, we should not hesitate to hold, that the transaction between the trustee and the beneficiary, the effect of which is a gift of the entire subject-matter of the trust to the trustee, in the procurement of false vouchers, evincing a strict conformity to the requirements of the trust, but, in truth, designed to defeat it, could not be supported against the objection of the *cestui que trust*. The condition of the parties, the relation of trustee and *cestui que trust*, and the profit to the trustee without any corresponding benefit to the beneficiary, all forbid that we should sustain the transaction.

Aside from positive fraud, public policy forbids such dealing. 1 Story's Eq. Jurisp. § 321, and notes.

As to the position, that this property vested in Hanchey, the first husband of Mrs. Segars, it is enough to say, that the record no where shows that he ever held it as such. The most he could have claimed was the share of the profits to which his wife was entitled; and without now deciding that he acquired an interest even to that extent, it is enough that no question as to such profits is raised by the record. What we said in Hill and Wife v. McRae, at the last term, 27 Ala. 175, is sufficient to indicate our views with respect to the nature of Mrs. Segars' interest.

The decree of the chancellor conforms to our view of the law. Let it be affirmed, with costs.