IRBY, ADM'R DE BONIS NON, *vs.* KITCHELL, ADM'R DE BONIS NON.

[FINAL SETTLEMENT—CONVERSION—ESTOPPEL.]

1. *Deposition ; objection to, when made.*—An objection to the deposition of a witness, on the ground that the commissioner's certificate thereto was defective, cannot be made for the first time, on the trial.

2. *Administrator; conversion of property of estate.*—An administrator, who is guilty of a tortious conversion to his personal use and advantage, of the property of an estate entrusted to his care, as an administrator, is chargeable with the highest value of the property so taken by him.

3. *Same; same; estoppel.*—An administrator, who finds property among the assets of the estate, and takes possession of it as the property of the estate, and sells it, having no claim to it himself, and not being claimed by any other person, is estopped from setting up a claim adverse to the estate, and is liable to the estate for the property thus sold.

APPEAL from the Probate Court of Marengo.

IN the matter of the final settlement of Charles Irby, as administrator *de bonis non* of the estate of James M. Rembert, deceased. James P. Rembert was the son and administrator in chief of James M. Rembert, who died intestate. Irby was the successor of said James P., and the first administrator *de bonis non* of said James M., and was at the same time administrator in chief of the said James P., and during that time made a final settlement with the court, of the said administration in chief of the said James P. On that final settlement, the estate of the said James P., administrator in chief as aforesaid, was charged with the proceeds of 115 (80 and 35) bales of cotton, of the estate of said James M. This final settlement occurred 12th December, 1864. Afterwards, and on the 6th February, 1866, Irby resigned his said administration upon the estate of James M. Rembert, and Frank N. Kitchell, the appellee, became his successor, as second administrator *de bonis non* of said James M. In December, 1865, Irby filed his account for final settlement of his said administration, so resigned by him, and on the 2d Monday in June, 1867, the final decree was made as to the final settlement of said administration of Irby, on his said application, resulting in charging Irby with a specified quantity of bacon at 24 cents per pound, and with 75 bales of cotton, averaging 512 pounds each, at 27½ cents per pound. From this decree Irby appealed. The other facts of the case necessary to a correct understanding of the questions of law decided, will sufficiently appear from the opinion of the Chief Justice.

WOOLF and RICE, for appellant.
WATTS & TROY, *contra.*

A. J. WALKER, C. J.—1. If the commissioner's certificate to the deposition of A. B. Jones was defective, there was no error in the overruling the objections when made for the first time on the trial.—Revised Code, § 2728 (2328); *McGill v. Monette*, 37 Ala. 49.

2. The court charged the appellant with the highest value of the bacon taken by him. This the law, under the circumstances proved, authorized. It did not in such a case as this, limit the court to the value at the time of the conversion.—*Hudson v. Helmes*, 23 Ala. 585. The appellant, upon the evidence, was guilty of a tortious conversion to his personal use and advantage of the property of an estate entrusted to his care as an administrator.

3. The court of probate charged the appellant with the value of seventy-five bales of cotton sold by him. It excluded evidence as illegal, which was offered by the appellant, for the purpose of relieving himself from liability to this charge. The evidence thus excluded is set out in the bill of exceptions, and we know what it is. We shall consider this case as if this evidence had been admitted in the court below, and if we attain the conclusion, that the decree of the probate judge was not only correct upon the evidence, but would have been correct if the evidence rejected had been received, it will be obvious that no injury has resulted from the exclusion of such evidence, even though it may have been erroneous.

Treating the excluded evidence as before us for consideration, the facts upon which the imputation of error is predicated, are, that J. P. Rembert was the first administrator of J. M. Rembert, deceased; that the administration of J. P. Rembert terminated in consequence of his death in 1864, and Dr. Irby, (the appellant,) was then appointed administrator *de bonis non;* that Dr. Irby, also, became the administrator of the estate of J. P. Rembert; that being such administrator, he settled in the probate court the accounts of J. P. Rembert, as the administrator of J. M. Rembert; that in the account filed by Irby for the settle-

ment of the administration of J. P. Rembert, he credited his intestate with 80 bales of cotton, alleged to have been transferred to the Confederate government in March, 1864, for bonds of that government; that the account so filed was allowed; that the eighty bales of cotton above named, was the cotton, a part of which composed the seventy-five bales for which Irby, the administrator, is charged; that Irby, upon becoming administrator *de bonis non* of the estate of J. M. Rembert, deceased, found the cotton under a shelter upon the estate; that J. P. Rembert, who had made the contract with the Confederate government, in that contract agreed to keep the *same on* the plantation, and deliver it on the order of the Secretary of the Treasury of the Confederate government; that Irby, the administrator *de bonis non*, in 1865, after the Confederate government expired, by virtue of his authority as the administrator of the estate of J. M. Rembert, took possession of the cotton, and through the agency of a distributee of the estate, and with the wagon and teams of the estate and of the husband of one of the distributees, hauled the cotton to a steamboat landing, and that Irby sold the cotton so hauled.

It is not pretended that Irby had any right to the cotton, or that any person in the world denied that it belonged to the estate of which he was administrator. The argument upon which his claim to retain the benefit of his sale of the cotton is predicated, is that by the contract between J. P. Rembert, his predecessor in the administration, and the Confederate government, the cotton was sold, and ceased to be the property of the estate, and that therefore he is not accountable to the estate for the value of the cotton which he has converted. It is insisted, upon several reasons, on the other hand, that there was no complete sale; that at most, it was an exchange of chattels, and that the transaction, whether a sale or not, was illegal and void. It will not affect the result of this case to concede to Irby, that there was a valid sale by J. P. Rembert of the cotton to the Confederate government, and we proceed with the consideration of the case upon that concession, without affirming its correctness.

28

The question to be decided is, whether an administrator, who finds property among the assets of the estate, takes possession of it as the property of the estate, and sells it, having no claim to it himself, and the same not being claimed by any other person, can relieve himself from liability to the estate by setting up a claim adverse to the estate. We decide that he is estopped from setting up such adverse title.

The doctrine upon which our conclusion rests is, that a trustee, who receives property as assets of the trust, cannot resist his liability on the ground of an adverse title, which has never been asserted against him. The cases of *Pettit's Adm'r v. Pettit's Distributees*, 32 Ala. 288; *Ashurst v. Ashurst*, 13 Ala. 781; and of *Smith v. Wiley*, 22 Ala. 396; and *Smith v. Smith*, 13 Ala. 329, are not at all opposed to our conclusion. The former two cases relate to the proceeds of void sales of lands. Lands are not assets in the hands of the representatives of estates. It is only the rents or proceeds of sales that are assets. If the sales are void, it is as if they had not been made, and the proceeds of such sales cannot be assets. In the latter two cases, it was decided that the rents of land in another State, received by an administrator or guardian, are not assets. It is obvious these cases have no bearing on the question, whether an administrator receiving property as assets of an estate, and which is of such character as to be assets, can afterwards avoid accountability on the ground of an unasserted title in some third party.

Our position, that he is estopped from doing so, is well sustained by authorities.—*Miller v. Jones*, 26 Ala. 247; *Manigault v. Deas*, 1 Bailey's Eq. R. (S. C.) 283–289; *White v. Swain*, 3 Pick. 365; *Phillips v. Rogers*, 12 Metcalf, 405; *Colburn v. Broughton*, 9 Ala. 351; *Henderson v. Segars*, 28 Ala. 352; *Crutchfield v. Haynes*, 14 Ala. 49; *Godwin v. Young*, 22 Ala. 553; *Van Horn v. Fonda*, 5 Johns. Ch. 388, 409; *Kellogg v. Wood*, 4 Paige, 578; *Harrison v. Mock*, 10 Ala. 185; *Lee v. Fox*, 6 Dana, 171–176; *McLane v. Spence*, 6 Ala. 894; *Wiswall v. Stewart*, 32 Ala. 433; *Duncan v. Bryan*, 11 Ga. 63; Hill on Trustees, m. pp. 535 n., 543 n.; Lewin on Trusts, m. p. 325, t. p. 301, n. m.

It may be that a trustee would not be estopped from setting up his own title by the acceptance of a trust in ignorance of it, or through mistake, when he had done no act which it would be prejudicial to the beneficiaries for him to gainsay.—*McWilliams v. Ramsey*, 23 Ala. 813. So, also, it may be, that a trustee notified of an adverse claim would not be required to surrender the assets until that claim was settled.—Lewin on Trusts, *supra*. These principles do not touch the point of this case. The administrator does not pretend to have had any right to the cotton, or that any body else is claiming it. There is presented an open and undisguised attempt by a trustee to avail himself of his trust to make a personal profit out of an imputed defect in the title to the property which has come to his hands as trustee, and to make himself the beneficiary of a claim adverse to the trust. It is to the credit of the law that it does not tolerate such a thing. The authorities we cite above are conclusive upon the point, and show how perfectly the law harmonizes with good faith and good morals.

There is some confusion and doubt in the evidence, as to the number and weight of the bales of cotton. We have examined the subject as well as the testimony before us enables us to do, and we are not able to affirm that the court has erred in fixing the number of bales and weight to the prejudice of the appellant. The appellant, if he had acted faithfully and carefully, as the law required him to do, would have been able to have removed all obscurity and confusion on this subject. He has not done so. The law in reference to this subject would justify the application to him of the maxim "*omnia presumuntur contra spoliatorem.*"—Broom's Legal Maxims, t. p. 576—m. p. 725. Indulging the presumptions which this maxim authorizes, there can be no doubt that the decree of the court below was as favorable to the appellant as it ought to have been.

Affirmed.

JUDGE, J., not sitting.

BYRD, J.—I concur in the conclusion attained by the chief justice, but not upon the reasons assigned by him as to the points hereinafter noticed. Whether Doctor Irby

took the bacon under a mistake of his duty—and I am disposed to make the most charitable presumption—or took it tortiously, and with a knowledge that he was doing wrong, he is liable, in my opinion, to the extent, that the court below held him responsible under the evidence.

And so, also, as to the cotton with which he was charged. In my judgment, the acts of the legislature did not authorize an administrator *to exchange* cotton for Confederate bonds, and therefore no title passed to the Confederate States by the contract shown by the evidence of F. W. Siddons.

Hence, when Doctor Irby was appointed administrator *de bonis non*, it was his duty to take possession of the cotton, and as he did so, and sold it, he is liable for the proceeds of sale. It is true that Doctor Irby, as administrator of the administrator in chief, settled the administration of the latter upon the estate of Jas. M. Rembert, deceased, and in such settlement accounted for the Confederate bonds as so much cash. But he could not in that way discharge his own liability *for the proceeds of the cotton sold by him.* The evidence as to the number of the bales is somewhat conflicting, but under the rule laid down in *Kirksey's Distributees v. Kirksey's Adm'r*, in MS. at present term, as to the ruling of the probate court upon evidence where the witnesses conflict, I am satisfied to let the ruling of the judge of probate stand. In my opinion, it is a grave question, whether the contract, as proven by the witness, F. W. Siddons, Esq., shows such a sale of any specific cotton as to pass the title to the purchaser.—*Brownings v. Hamilton, use, &c.,* at present term. And if the contract was not an executed one, my opinion is that Confederate bonds is not such a consideration as will support an executory contract of sale. The statute does not authorize such a contract by an administrator as is shown by the evidence of the witness, with whom it was made.