## CHARLES BARNETT *v.* WILEY B. STEWART et al.

**Sureties — Liability.**

Sureties on a bond cannot be held liable for moneys collected by executors out of property coming into their hands in their fiduciary capacity from a source other than that of the estate of the testator. In such case proper applications of proceeds from sale of land required by bond under Act of 1820.[1]

**Codicil — Notes Due Testator — Advancement.**

A codicil to a will recites "That all notes on each of my sons and sons-in-law of which I may die possessed, shall be deducted from the monies accruing to them or to their children." *Held*, as against minor heirs of a legatee whose husband was indebted to the estate in a large sum, said amount being construed as an advance to the legatee under the will.[2]

**Executors — Personal Liability — Separate Estate.**

Executors of an estate of a testator who intermeddle with a separate estate of the wife of the testator may be held personally liable to the distributees of the latter estate, but this does not fix a responsibility on them as executors, where the property thus taken over by them was divided among those claiming to be entitled thereto.

**Same.**

A *fortiori*, they are liable *in personam* for a distribution of property to a person not entitled to receive it.

---

1

The execution of a bond to account for the proceeds of the sale, when required by the statute, is essential to the validity of the sale. Currie *v.* Stewart, 4 Cush. 646; Hamilton *v.* Lockhart, 41 Miss. 460; Washington *v.* McCaughan, 34 Miss. 304; Rucker *v.* Dyer, 44 Miss. 591.

And the rule is the same, where the sheriff is appointed administrator *virtute officii*. Rucker *v.* Dyer, 44 Miss. 591.

The fact that a county administrator has given bond as such does not exempt him from giving the special bond required by section 1197, Code 1871, of all administrators making sales of land. Such sale made without the special bond is void. Heth *v.* Wilson, 55 Miss. 587.

Where a bond required of an executor by a decree for the sale of the land was executed and filed on the day of the sale, and the decree recites that the

This was a suit for a *devastavit* against a surviving executor and his surety on a bond. Appellees are the children of Emily Stewart, deceased, daughter of Joel Barnett, who died July 30, 1851. In the last will of Joel Barnett, probated August 5, 1851, special provision is made for his widow as follows: " I give unto my beloved wife, Mildred Barnett, seven negroes to be selected by herself out of all the negroes that I may die possessed of: I give unto her all my household and kitchen furniture: I give unto her such portion of my plantation tools as she may choose to select: I give unto her five hundred and fifty acres of land to be located around my residence in such form as she may desire: I give her all my stock of horses, hogs, and cattle: I give her an equal share with all my children in all the moneys and debts due me, that I may be possessed of, all of which is given her during her natural life," and after making special legacies to several of his children he wills that " the balance of my estate, both real and personal, I desire to be equally divided among all my children." This will is dated May 27, 1848, and a codicil thereto dated May 21, 1849, reads as follows: " I do ordain this as a credit to my last will and testament, namely: It is my desire that all the notes on each of my sons and sons-in-law of which I may die possessed shall be deducted from the moneys accruing to them or to their children at a division of my estate." The will appointed as executors Mildred Barnett, Charles Barnett, Nathaniel Barnett, John Gilmore, and W. V. Stewart (husband of Emily Stewart, a daughter), father of appellees. Mildred Barnett and Nathaniel Barnett having renounced, letters testamentary were granted Charles Barnett, John Gilmore, and W. V. Stewart, who were duly sworn in and entered into bond in the sum of $180,000, with Nathaniel Barnett and Joel

---

directions of the decree and the law had in all things been complied with, this sufficiently shows that the required bond was given, although there is no express order approving it. Yerger *v.* Ferguson, 55 Miss. 190.

2

A codicil duly and legally executed, which makes a disposition of the testator's property inconsistent with the disposition made in the will, is, to the extent of such inconsistency, a revocation of the will without an express clause to that effect, and it will so operate, although the disposition attempted to be made by the codicil be void for illegality. Thus, when a testator by his will gave his slaves absolutely to his widow, but by a codicil thereto gave them to her " if she should marry and have issue, otherwise that they should be set free," the codicil, though void as to the attempted emancipa-

B. Gresham as sureties.   On the 5th of September, 1851, Mildred Barnett filed a release to all the personalty willed her (a reservation being made for a small portion of specific items), for the purpose that the same might be sold and go into the general estate of her husband.   And on March 6, 1852, Mildred Barnett acknowledged and filed a release to all the land willed her with the request that said land might be sold with the residue of the landed estate of her late husband and go into the general distribution.

Amongst the notes due to Joel Barnett, deceased, was found one against W. V. Stewart, husband of Emily Stewart, one of the heirs, amounting to $7,155, due December 7, 1849, which with interest up to April 1, 1857, the date of final distribution, amounted to $10,297.30.   On December 28, 1852, Mildred Barnett died and all personal property was taken in hand by the executors of the estate of Joel Barnett, deceased, for an equal distribution, with the balance of the property of said estate.   In the notes and accounts thus transposed was an indebtedness due by W. V. Stewart of $906.20.   On April 28, 1852, Nathaniel Barnett filed a petition for the sale of all the lands of Joel Barnett, deceased, and that willed his wife, Mildred Barnett, and afterward relinquished by her, and upon hearing thereof, the court appointed W. V. Stewart, Nathaniel Barnett, and John Gilmer, executors of the will of Joel Barnett, deceased, commissioners to sell said lands upon their entering into bond for the proper and legal application of the proceeds of same.   In the sale of the land, rents for the ensuing year were reserved.   Personalty belonging to Mildred Barnett, deceased, included in which was sixty-one bales of cotton raised by her on

tion, revokes the bequest of them made in the will, and the widow can only claim such interest in the slaves as is vested in her by the terms of the codicil.   Read *v.* Manning, 30 Miss. 308.

The great rule for the interpretation of a will is that the intention of the testator must be ascertained from the language employed, and must be carried into effect if not inconsistent with the rules of law, and the word sare to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected from the will.   Where there is no ambiguity in the words, there is no room for construction.   Vannerson *v.* Culbertson, 10 S. & M. 150.

The words are to be construed in their plain and natural sense unless a different intention be manifested by the context.   Tucker *v.* Stites, 39 Miss. 106.

In the construction of wills, the main object is to ascertain the intention of the testator; the intention is to be gathered from the whole will, and, if

the land during the year of her death, was petitioned to be sold for division as in the matter of the land before enumerated, which was granted. The total estate thus administered amounted to $149,768.19.

On December 28, 1883, appellees filed their petition in the Chancery Court of Noxubee county against Charles Barnett and J. B. Gresham, a surety, seeking to recover $15,157.45. They allege that they are the legal heirs of Emily Stewart, a daughter of Joel Barnett, and that their mother died in the year 1853 intestate, and that no administration of her estate was ever had, and that no portion of same has ever come to them. Their father, W. V. Stewart, one of the executors of the will of Joel Barnett, died before they were of age leaving a very small estate. They charge the improper distribution of the amount falling to them as heirs of Emily Stewart, deceased; that the same was paid over to W. V. Stewart individually and not as administrator of their mother's estate — and seek to recover of the surviving executor, Charles Barnett, and surety, J. B. Gresham, that sum alleged to have been illegally distributed. A demurrer was filed, pleading the Statute of Limitations, with other grounds. On the hearing thereof, the demurrer was overruled, from which defendants appeal.

APPEALED from Chancery Court, Noxubee county, F. A. CRITZ, Chancellor.

Reversed and dismissed, December 1, 1884.

Suggestions of error overruled, March 13, 1885.

illegal, is to be carried out, notwithstanding it may violate technical rules. which relate to the construction of words rather than the nature of the esate. Sorsby *v.* Vance, 36 Miss. 564.

Where a father is accustomed to make loans to his children, keeping memoranda of the same, as advancements, and his son buys land from a third person, borrowing the purchase money from his father, who pays the same to such person, taking the title in his own name as security, the son becomes, in equity, the owner of the land and the father mortgagee as to the amount so paid. And if the will of the father directs that in distribution of his estate an account shall be taken of the amounts advanced to, and the debts due from, his children, the amount so paid for the land at the instance of the son is to be treated as an advancement to him, and, as against the other heirs and devisees of the father, this is sufficient to release the debt for the money so paid. Chiles *v.* Gallagher, 67 Miss. 413, 7 So. 208.

*Attorney for appellants, L. Brame.*

*Attorneys for appellees, Rives & Rives, and W. P. & J. B. Harris.*

Brief of L. Brame:

Under the law, as it then existed, W. V. Stewart, as husband, was entitled to the share of the estate of Joel Barnett which was devised to Emily Stewart. After making certain bequests, the language of the will is: " The balance of my estate, both real and personal, I desire to be equally divided among all my children." This, by all the authorities, was a legacy, *a chose in action,* and being a *residuary* legacy, it was not embraced in the Acts of 1839 and 1846, and accrued to the husband by virtue of the marital rights. Lowry *v.* Craig, 30 Miss. 19, approved by the court in Mitchell *v.* Mitchell, 35 Miss. 108 (see note to opinion, page 116); Cook *v.* Lindsley, 34 Miss. 451.

That a legacy is a chose in action, see Wade *v.* Grimes, 7 How. 425. This legacy vested after marriage, and, as the bill shows, the property was reduced to possession by the husband during coverture, and, therefore, his rights as husband accrued. Scott *v.* James, 3 How. 307.

This is certainly true with respect to the personal property of the estate of Joel Barnett, for which only can the appellants be held liable in this suit on the general executor's bond, as we shall hereafter show. The case of Robb *v.* Griffin, 26 Miss. 579, is the sole authority relied upon by counsel for appellees in their opposition to our view on this question. In the opinion (on page 581), the court says: " In this case the property was never distributed, and the share of complainant's wife was never set apart to her, nor was it reduced to possession by the husband." The fact that the property was never reduced to possession by the husband during coverture is sufficient of itself to distinguish this case from the other cases cited above; but whether it is distinguishable or not, the rule we insist upon was distinctly recognized and applied in the subsequent case. Whatever may be said of the correctness or incorrectness of these decisions, as an original proposition, it is sufficient that the law was so announced by this court at the time; and under these decisions the parties acted when the rights accrued are now called in question.

The marital rights of W. V. Stewart were not excluded by the will. On the other hand they were clearly recognized. The testator provided that the share of his estate going to his daughter Mary Smith should be vested in trustees, to be managed by them for her use and benefit, and that the portion going to his daughter Lucy Ann Burke should remain in the hands of trustees, " to be managed by them for the use of her children." And the codicil is in this language: " It is my desire that all the notes on each of my sons and sons-in-law, of which I may die possessed, shall be deducted from the moneys accruing to them, or to their children, at a division of my estate." W. V. Stewart was a son-in-law, and owed the testator a note for $7,155. All this shows that the marital rights of Stewart were recognized at that time, and that it was understood that he was entitled to receive that portion of the estate in respect to which complainants seek relief in this suit.
\* \* \*

On the qualification of the executors, August 5, 1851, they gave a bond in the penalty of $180,000, with Nathaniel Barnett and J. B. Gresham as sureties, payable to the judge of probates, conditioned for the proper administration of the " goods, chattels, and credits " of the decedent. There was a large personal estate, which was administered. On April 28, 1852, Nathaniel Barnett, who was a son of Joel Barnett, deceased, and a tenant in common of the land, filed a petition for its partition, alleging that it could not be equitably divided, and asking for a sale, in order that there might be a division of the proceeds. The other tenants in common were summoned, and on August 2, 1852, a decree was entered for the sale of the lands. The decree directed John Gilmer, Charles Barnett, and W. V. Stewart, who were the executors, to sell the land, and recited that they had executed a bond " in pursuance of the statute, for the legal application of the proceeds of said sale." The sureties on the bond were J. B. Gresham and W. H. Smith, and it was made payable to the State of Mississippi, and conditioned, as stated in the decree, for the proper application of the proceeds. The land was sold for $37,788.95.

The will provided that several advancements that had been made to the children of the testator should be equalized out of his estate; but the land was not sold for this purpose. The value of the slaves belonging to the estate amounted to about $90,000, and there was other personal property. All inequalities could

have been easily made up by a division of the slaves and other personal property, and, therefore, the executors proceeding under the will had no authority to sell the land for the purpose of equalizing the advancements; and they did not, in fact, attempt to do this. It is true that there were some inequalities among the legatees after the slaves were divided, but this was occasioned by an unequal division of the slaves. The land was sold for partition under the decree of the court, at the instance of one of the tenants in common; and the bond that was given for the application of the proceeds was signed by different parties, and for a different amount, and was conditioned differently from the executor's bond upon which this suit is instituted. This suit is based alone upon the executor's bond. The bond given for the proceeds of the land is not sued upon, and is not even mentioned or referred to in the bill. Defendants cannot be held liable in this suit for the proceeds of the land. Reeves v. Steele, 2 Head (Tenn.), 647, Commonwealth v. Hilgert, 55 Pa. St. 237; Brandt on Suretyship, § 499; Rucker v. Dyer, 44 Miss. 591; Whitfield v. Evans, 56 Miss. 488.   *   *   *

There were nine legatees. Mildred Barnett, the widow of Joel Barnett, was given a life estate in a portion of his land and slaves. She died December 28, 1852, and the executors took charge of her estate and charged themselves up with the personalty. The crops raised by her that year were emblements and belonged to her absolutely, and constituted no part of the estate of Joel Barnett for which the executors were liable. The proceeds of the crop amounted to $2,177.94, and this sum should be deducted from the assets above, which would leave an excess of liabilities over personal assets. Therefore, deducting from the accounts the proceeds of the sale of the land, which was charged up with interest, the record shows that there is nothing for which the executors are liable in this proceeding.

It is true, as urged by opposite counsel, that the will provided that the advancements should be made equal out of the testator's estate, and that no distinction was made between the real and personal estate in this respect. But, while the will does not expressly provide that the personal property should be first resorted to for this purpose, the law required this, and there was no authority for the executors to sell the land to equalize the advancements, because there was an abundance of personal property. Besides, as

before stated, the land was not sold by the executors under the *will,* to equalize advancements, but by decree of the *court* under partition proceedings, and a separate special bond was given in accordance with thé statute, conditioned for the faithful application of the proceeds. This bond was given at a different time, for a different amount, with different sureties, to different obligees, and upon a wholly different condition from the general executors' bond. Clearly the defendants are not liable for a breach of it in this suit. Indeed, no breach is alleged, and the bond is nowhere alluded to in this bill. Nor is it even stated than any such bond ever existed. It is true, as counsel say, that complainants at their option might have been sued on this bond without joining Smith, the other surety; but they did not do so, and this is a complete answer to the claim that we are liable in this suit for any failure to properly apply the proceeds of the sale of the land. In the brief of opposite counsel, it is said that where a party holds two different characters, he must be dealt with as two different persons. We adopt this as a correct statement, and under it claim that there can be no liability in this suit for a breach of the conditions of the land bond, if there has been such breach. The suit is based alone upon the other bond, and a decree *in personam* is asked against the surviving executor and his surety thereon. Because Graham was also surety on the bond given by the executors as commissioners for the sale of the land, the court cannot " *consider* " the suit as having any reference to that bond.

We ask that the decree appealed from be reversed, and that a decree may be entered here sustaining the demurrer and dismissing the bill.

Brief of Rives & Rives:

It has been claimed by appellant that W. V. Stewart was entitled in his own right to his wife's portion of the estate of her deceased father, that her right under the will was a chose in action that accrued to her after coverture and, at common law, vested absolutely in the husband whether reduced to possession while the wife lived or not, and that the common law, in this respect, was not affected by any statute in force in this State in 1851 when the will became operative. If such claim be well founded, that ends this case.

At common law where a legacy or distributive share accrued to

the wife during coverture and she died, her husband surviving without having reduced it to possession in life of his wife, it did not survive to him in his own right but he was entitled to recover it by acting as her administrator. 2 Kent's Commentaries, § 135. The cases of Wade v. Grimes, 7 How. 425, and Cook et al. v. Lindsay, 34 Miss. 451, and perhaps some others seem to hold that at common law a chose in action accruing to the wife during coverture vested absolutely in the husband without reduction to possession. This is a mistake. In the first case the chose in action accrued before coverture, and the court was not called upon to decide any question as to choses accruing after coverture.

In the other case it was only necessary to decide whether the husband could sue in the lifetime of his wife without joining her, and the court, relying on the first case, held that he could.

We think the distinction is plain enough. If the chose accrued during coverture, the husband could, without joining his wife, sue in his own name if he sued while she was living, but if she were dead he could not claim in his own right but must claim as her administrator.

But whatever may have been the rule at common law, this question was settled by our statutes. The Act of 1839 (Hutchinson's Code, 496), provides that " any married woman may become seized or possessed of any property real or personal by direct bequest, demise, gift, purchase, or distribution in her own name and as of her own property provided same does not come from her husband after coverture."

Whether the Act of 1839 affected the rule as to *all* choses in action of the wife or not, it certainly affected it as a " bequest, demise, gift, purchase, or right of distribution." To hold otherwise is to hold the above-quoted provision nugatory. How could a married woman ever becomes seized or "possessed of property by direct bequest, demise * * * or distribution in her own name and as of her own property " if the moment the right to the bequest or distribution accrued to her it vested absolutely in her husband?

The Act of 1846 (Hutchinson's Code, 498), provides that if a married woman " die possessed of slaves or other personal chattels as her separate property leaving issue of her body, either by a former husband or by her surviving husband, such slaves or other personal chattels shall descend to her children or child in equal

shares; but if she die without issue surviving her, the same slaves and other personal property shall vest in the surviving husband."

In Rabb *v.* Griffin, it is held that the above-quoted words " slaves and other personal chattels of which the wife died possessed as her separate property," must be understood to comprehend all such rights and interests of the deceased wife in personal property as might have been asserted and enforced under the rules of the common law, by her administrator, and all such choses in action as by the same rules would have vested in the surviving husband *que mariti;* and " that all the rights, whether in action or possession which the wife was entitled to at her death, were intended to be vested first in her children and secondly in her husband." Rabb *v.* Griffin, 26 Miss. 582.

This was the law in force in 1851 when Joel Barnett's will became operative, and in 1853 when Emily Stewart died and her rights and interests under the will vested in her children as her heirs and distributees.

Under the statutes in force at the time of the pretended final account and decree, it was, perhaps, unnecessary to summon those minor children, but as they had no guardian it was necessary to appoint them a guardian *ad litem.* As this was not done the decree was not conclusive nor was it in any manner binding on them. The account was as to them, at best nothing more than an annual account. Code 1857, § 451, art. 32; Dohan *v.* Brown, 44 Miss. 235; Wells et al. *v.* Smith, 44 Miss. 302; Kennedy *v.* Gaines, 51 Miss. 625; Burrus *v.* Burrus, 56 Miss. 92; Bailey *v.* Fitzgerald, 56 Miss. 578; Crawford *v.* Redus, 54 Miss. 702.

The case of Frisby *v.* Harrison, 30 Miss. 452, is not against us although under the peculiar circumstances of that case it was held unnecessary to appoint a guardian *ad litem.* Had W. V. Stewart been himself disinterested and had he appeared in that settlement in behalf of his children then possibly Frisby *v.* Harrison, *supra,* might have been invoked against us, but he was not disinterested; he appeared in that settlement not in behalf of his children but adversely to them. He was one of the executors filing the account and who had taken his children's money in his own pretended right. * * *

Most of the causes of demurrer assigned indicate a misconception, on the part of demurrant, of the nature of complainants' rights and of the nature and scope of their bill. When the exec-

utors ignored the rights of Emily Stewart and of her heirs and distributees and paid over their share to W. V. Stewart on his pretended claim of right to so much of the estate of Joel Barnett, they did not thereby, in any manner or to any extent, relieve themselves from the responsibility of the trust reposed upon them as executors. W. V. Stewart could not " renounce his representative character and act under another. He could do no act in regard to the estate for which he was not amenable as executor." He could not hold the money in any other character than that of executor except " by an arrangement with the legatees." 2 Williams on Executors, §§ 1660, 1749; Angell on Limitations, § 168.

(This is not inconsistent with the rule as laid down in Davis v. Bowman, 55 Miss. 743, that where the interest or claim was not acquired since he became trustee but had before his acceptance of the trust he might appeal to the court to which he is subject as trustee to adjudge his rights as an individual to an interest in the property.)

So long as W. V. Stewart, who was one of the executors, retained those funds, he and his coexecutors must be held liable as upon a continuing trust until there is a valid settlement and discharge of that trust. There has been no valid settlement or discharge, the trust continues, and is not affected by the Statute of Limitations. Crawford v. Redus, supra; Jordan v. McKenzie, 30 Miss. 35 et seq.  *  *  *

The liability rested equally upon all and each of the executors and if the remedy, as against W. V. Stewart, has been lost by his death, that does not affect the right against the survivor. We could sue any one or more of the obligors. Code 1880, § 1134.

All the surviving obligors on the bond are made parties defendant. Under our statute, the surety Gresham was at least a proper, if not a necessary, party defendant. Code 1880, §§ 1834, 2084.
*  *  *

Brief of J. B. & W. P. Harris:

The title of Mrs. Stewart was clear under the Acts of 1839 and 1846, and on her death in 1853 it descended to her children. Mitchel v. Mitchel, 35 Miss. 100; Clerk v. McCrary, 12 S. & M. 437; Duncan v. Johnson, 23 Miss. 130.  *  *  *

The scope of this bill is such that should the court decide that the payments to Wiley V. Stewart were valid and binding on the heirs, an accounting would be a matter of form.  *  *  *

OPINION.—CAMPBELL, C. J., delivered the opinion of the court:

Passing by all other questions raised by the demurrer, we hold that upon the facts shown by the bill (which makes the record of the administration of the estate of Joel Barnett, deceased, a part of it), the complainants are not entitled to a decree in this case. The proceeds of the sale of the land of the decedent were not assets. The land was sold under the Act of 1830, and a bond was given for the proper application of its proceeds as required by that act. The money arising from this sale was not covered by the general bond of the executors, and it is to be excluded from the computation. The proceeds of Mildred Barnett's sixty-one bales of cotton are to be excluded on a like ground. By the codicil, the amount of the note of Wiley V. Stewart, a son-in-law of the testator, was to be deducted from the distributive share of Mrs. Stewart, his wife, and a legatee, and this sum is to be excluded from the computation of the personal estate covered by the bond of the executors.

The effect of the codicil was to charge Mrs. Stewart with the amount of the note of her husband as so much advanced to her under the will, and as lessening by that much her share. The executors were not liable for the amount of this note.

Excluding the several sums mentioned, it is apparent that the entire personal estate was consumed in equalizing the shares of the several legatees, and that there is nothing of which these complainants can justly complain.

Decree *reversed* and bill dismissed.

ON SUGGESTIONS OF ERROR.

Brief of Rives & Rives:

Whatever may be the privilege of Gresham, the surety, certainly Barnett, the executor, is estopped to deny that the proceeds of sale of land and sixty-one bales of cotton are assets of the estate for which he is accountable as executor.

The parties entitled under the will of Joel Barnett were the children and grandchildren, who were also the children and grandchildren of Mildred Barnett, and as such entitled as distributees of her estate each to the same proportionate part of the proceeds of the sixty-one bales of cotton as if the cotton had belonged to the estate of the testator.

To save costs of a separate administration, and inasmuch as the rights of the parties were the same, the assets of the estate of Mildred Barnett, deceased, were treated as the assets of the estate of Joel Barnett. They were so treated by the executors, who, under the solemn sanction of their oaths, reported such assets as assets of their testator. They were so treated by the court in its various orders and decrees. No adverse claim has ever been set up thereto. It is now too late to reach those assets through an administration of the estate of Mildred Barnett, and will this court say to the executor, You took those assets as assets of your testator; you reported them under your oath as such; you held them as such until all adverse claims thereto are barred by limitation; now we will allow you to say that your sworn report was untrue, that you acted wrongfully in taking and treating these assets as you did, and you may then relieve yourself of all liability to account for the money thus wrongfully taken by you?

The same reasoning applies precisely to the proceeds of the sale of the land. The executor treated such proceeds as assets of his testator until all remedy on the land bond is barred by the Statute of Limitations and now says, It was wrong in me thus to take, hold and treat such proceeds. I will take advantage of my wrong and relieve myself of all liability to account for such proceeds. Will this court sustain him in thus taking advantage of his own wrong?

As heirs of the grandfather, then, complainants would have been entitled to their same proportion of the proceeds of the land sale as they now claim under the will, but this executor, knowing that their rights on the land bond are now barred, changes for the first time his attitude with reference to such proceeds, and relieves himself from all liability. Such a course is too shocking to equity and conscience to be permitted by this court when once its attention is directed to it.

In Irby v. Mitchell, 42 Ala. 438, the question was raised whether an administrator who took possession of property as the property of the estate, and sells it, having no claim to it himself, and no other person making claim for it, can relieve himself from liability to the estate by setting up a claim adverse to the estate. It was held that he could not, and the decision was based upon the doctrine that a trustee who receives property as assets of the trust cannot resist liability on the ground of an adverse title which has never been asserted against him. The court remarked that " The

administrator did not pretend to have any right to the cotton or that anybody else was claiming it. The case was an open and undisguised attempt by a trustee to avail himself of his trust to make a personal profit out of an implied defect in the title to the property in his hands. It is to the credit of the law that it did not tolerate such a thing. Bigelow on Estoppel, 383."

This court has held that while it is true that an administrator has no control or authority over the freehold estate of his intestate, yet, " After the administrator has received the rents and accounted for them to the Probate Court as assets of the estate, he will be precluded from alleging that he received the rents without authority, and must be chargeable with them as for assets rightfully received."

His own voluntary accounting must be conclusive against him as to his authority to do the act, and he cannot be permitted in a subsequent accounting to reopen his own accounts, and to deny his right to receive funds with which he had charged himself. Crowder v. Shackleford, 35 Miss. 359.

We will only add that the questions as to whether the proceeds of the sale of the land, and of the sixty-one bales of cotton, were to be considered as assets of Joel Barnett's estate or not were certainly discussed by counsel in oral argument before this court on first hearing, though possibly not in the briefs filed.

## On Suggestions of Error.

Opinion.—Cooper, J., delivered the opinion of the court in reply to the suggestions of error submitted by the appellee:

In deciding that, under the facts shown by the record in this cause, the appellee cannot call upon the surviving executor to account as such for the proceeds arising from the sale of the lands of the testator, or for the cotton derived from the estate of Mildred Barnett, we do not depart in any degree from the rule announced in Crowder v. Shackleford, 31 Miss. 321. In that case, the administrator had with the assent of the heirs-at-law received the rents and profits of the real estate, charged himself with them in his accounts to the court, and paid debts to an amount exceeding the rents thus received. Years afterward, when exceptions were taken to his final account, he attempted to repudiate the appropriation which had been made, and sought to obtain a double credit, one by retaining on the credit side of his account the amounts

which he had paid on the debts of the estate, and the other by striking from the debit against him the rents which he had received and disbursed.

In the case now before us, it unmistakably appears that the cotton received from the estate of Mildred Barnett was divided among those who claimed to be entitled to it, the father of appellees claiming in right of his wife and his claim being recognized by the executors of Joel Barnett. As executors they had no concern with the property of Mildred, and though by intermeddling therewith they became liable personally to the distributees of that estate, this did not fix a responsibility on them as executors. If it appeared that, having received and charged themselves with this cotton, they had made no disposition of it and that no claim had been made for it by the distributees of Mildred, then the rule announced in Crowder v. Shackleford might be invoked.

But it would be a hard application of any rule to hold that where representatives of an estate had taken property of third persons and charged themselves with it in their representative capacity, they could not return the property to the true owner and thus discharge themselves from responsibility to the distributees of the estate which they were administering. It is immaterial that in making return in this case the executors have delivered the property to persons not in fact entitled to receive it; this, though it would render them liable in a suit at law brought by the distributees of Mrs. Barnett, gives no cause of action by the distributees of Mr. Barnett, nor does the fact that the distributees of Mr. and Mrs. Barnett are the same persons change the character of the liability of the parties responsible for the wrong distribution.

The right of the heirs-at-law of Joel Barnett arising from the wrongful distribution of the proceeds of the land sold for partition is to go against the persons who acted as commissioners of the court in making the sale, and against the bond given by them for the proper application of the proceeds. It is true that these commissioners were also executors, but they sold under a decree rendered in a suit brought by one heir-at-law against the others for partition, to which the executors were not parties. It is manifest that the executors have charged themselves in their representative capacity with funds distributed by them as commissioners in the chancery suit, and it is now attempted to hold them because of the form rather than of the substance of the transaction.

A review of the whole record demonstrates that the account was made in the shape in which it now appears, by reason of the fact that the executors were also the commissioners by whom the sale had been made, and by whom the fund arising therefrom was to be distributed, and hence it was that they mingled their independent settlements and reported that they had done as executors what in truth they had done as commissioners. By the same account in which they charge themselves with the fund, they show its distribution.

We adhere to the decree before rendered.