MARTHA WINTER' AND SUSAN M. STRONG v. JACOB
TRUAX.

*Guardian and ward—Sale of lands—Purchase by guardian.*

1. No title passes by the sale and conveyance by a guardian at
   guardian's sale of the land of his ward, and its immediate
   reconveyance to him *individually* by the purchaser for the
   same consideration; citing *McKay v. Williams,* 67 Mich. 547.

2. When the authority appears upon the face of the instruments,.
   there is no presumption of honesty in a transaction by which
   the title of a *cestui que trust* is divested, and invested in the
   trustee.

Error to Tuscola. (Beach, J.) Argued June 19, 1891.
Decided July 28, 1891.

Ejectment. Plaintiffs bring error. Reversed. The
facts are stated in the opinion.

*Osborn & Mills,* for appellants, contended for the doc-
trine of the opinion.

*H. H. Markham (T. W. Atwood,* of counsel), for defend-
ant, contended:

1. The grantor in a deed is presumed sane and competent to make
   and execute the deed until the contrary appears; citing *Howe
   v. Howe,* 99 Mass. 88.

2. The order by the Ohio probate court is not evidence of insanity;
   citing *Rice v. Rice,* 50 Mich. 448, 53 Id, 432.

CHAMPLIN, C. J.   This is an action of ejectment,
brought to recover possession of the equal undivided
one-half of the N. E. ¼ of section 10, in township 12
N., of range 8 E., which the plaintiffs claim in fee. The
land is situated in the township of Juniata, in the county
of .Tuscola.   The defendant had judgment in the court

below, and the plaintiffs bring the case here upon writ of error.

Fourteen errors are assigned, all of which are waived except the eleventh, twelfth, and thirteenth, which read as follows:

"11. The court erred in charging the jury as follows: 'I take it that a sale might be made to a person who was in collusion with the guardian or an administrator, and yet a subsequent purchaser act in good faith. He would be one who had no knowledge of the collusion; who had not notice of it; was not aware of the want of authority. The question here turns as to whether these proceedings are such as to put Mr. Truax upon notice that there was bad faith in the proceedings.'

"12. The court erred in charging the jury as follows: 'Now, the question of bad faith even in the purchase, the purchase at the guardian's sale, is one entirely of presumption. He presumed it without any proof. Why Wright did afterwards deed to the guardian is possibly explained in the record. It would be an act in the line of the guardian's trust to have taken that deed back again to himself. It would not be a violation of his trust; it would be regularly included in the line of that trust. Taking it while he was guardian, it inured to the benefit of his ward. The trust would be just the same, and there is nothing inconsistent with the actual good faith of a guardian in taking a deed to himself for the purpose of making a more advantageous sale; that is quite often done. A sale is very often made in this State to a party who holds simply in trust, that a guardian or administrator may afterwards make a more advantageous sale by having time. So the question of bad faith by a guardian only is open upon this record, and the question of good faith of Mr. Truax is apparent on the record; that is, he is not charged as a bad-faith purchaser, except constructively by the record; and that turns again upon the question of whether that record affords enough notice, even to an inquiring lawyer, so that he could say that these proceedings were notice of bad faith. * * *" This is an ejectment case, and the defendant is in possession, and has made his improvements there. If that construction is to be put upon that particular section of the statute, I prefer the Supreme

Court to put it on. Under this impression of the law, it would be my duty to direct a verdict for the defendant.'

"13. The court erred in directing the jury to find a verdict in favor of the defendant, and as against the plaintiffs."

The facts shown by the record are that in 1873 Andrew Shultz owned the S. W. ¼ of the N. E. ¼ and the N. ½ of the S. E. ¼ of the N. E ¼ of section 10, township 12 N., of range 8 E., being in Tuscola county, Mich. On the 14th of January of that year he made his last will and testament as follows:

"I, Andrew Shultz, of Juniata, in the county of Tuscola, in the State of Michigan, being of sound mind and memory, do make and declare this, my last will and testament, in manner following, that is to say: I give and devise unto my daughter, Naamah Lucia Shultz, of my farm the following described tracts of land, namely: The north half of the south-east quarter of the north-east quarter of section ten, in township twelve north, of range eight east, in the county of Tuscola and State of Michigan; to have and to hold the said lands, tenements, and hereditaments, with the appurtenances, to her, the said Naamah Lucia Shultz, her heirs and assigns, forever.

"It is my last will that the remainder of my said farm and my personal property be sold at a reasonable time, and at a reasonable price, for the payment of all my just debts and funeral expenses; and that the personal property shall be sold and disposed of by my brother-in-law, Gearhart Kile; and that the real estate, namely, the southwest quarter of the north-east quarter of section ten aforesaid, be sold by my executor. I do hereby constitute and appoint my friend John Cole executor of this my last will and testament, and I also appoint him guardian of my said daughter and only child.".

Afterwards, on the 26th day of December, 1876, he died, owning the whole of the N. E. ¼ of section 10. His will was admitted to probate in the probate court of Tuscola county, and John Cole was appointed as executor thereof. It does not distinctly appear from the record,

which is very confusing and imperfect, who the heirs at law of Andrew Shultz were. The record of the probate court was offered in evidence, but it is not returned, nor are its contents stated, showing who such heirs were. We are left to presume that the daughter, Naamah Lucia Shultz, was the sole heir, and, if so, it is not perceived what use there was for a will. For the purpose of this case, we will assume that she was the sole heir. The record shows that she died, leaving as her heirs two children, viz., Helen E. Tucker and Leondard Sweet. Helen E. Tucker, on the 21st day of December, 1877, by deed executed that day, and recorded December 31, 1877, conveyed the whole of the north-east quarter of section 10, township 12 N., of range 8 E., to John S. Lewis for a consideration of $400.

The plaintiffs introduced in evidence a copy of the proceedings of the probate court of Geauga county, Ohio, showing that, upon February 6, 1878, Helen E. Tucker was, upon an inquest of lunacy, adjudged insane, and Cyrus A. Kellogg appointed her guardian. The order of appointment appoints Kellogg guardian of her person, but says nothing of guardianship of her property. On the same day a bond was filed, conditioned that Kellogg—

"Shall discharge with fidelity the trust reposed in him as guardian of the person and property of Helen E. Tucker, of the county and state aforesaid, and shall faithfully account with the probate court for the county of Geauga, aforesaid, for the management of the property and estate, together with the profits ensuing therefrom, to the order of said court or the direction of law, and shall in all respects perform the duty of guardian to the said Helen E. Tucker until discharged as the law requires."

Thereupon, on the same day, letters of guardianship were issued, of which the following is a copy:

"THE STATE OF OHIO, ┐ ss.
    Geauga county.    ┘

"*To C. A. Kellogg, of the county and state aforesaid,
    greeting:*

"*Whereas,* at a probate court held at the office of the
judge of probate in the town of Chardon, within and for
said county, on the 6th day of February, A. D. one
thousand eight hundred and seventy-eight,—present H. K.
Smith, judge of probate of said county,—it appearing
necessary that a guardian should be appointed to take
care of the property of Helen E. Tucker, who is
demented and insane, of said county, aged sixty-five
years, and I having the fullest confidence in your
prudence, fidelity, and circumspect conduct, have, and
by these presents do, constitute and appoint you, the
said C. A. Kellogg, guardian of the estate of said Helen
E. Tucker during her incapacity, unless sooner discharged
by the court or the law. You are therefore hereby
authorized and required to perform the duty of guardian
to the estate of your said ward in all respects in con-
formity to the laws and statutes in such case made and
provided.

[Seal.]                       "H. K. SMITH,
                    "Judge of the Court of Probate."

It will be observed that the letters of guardianship
appoint Kellogg guardian of the estate, and not of the
person, of Helen E. Tucker during her incapacity.

On March 1, 1878, John S. Lewis conveyed the whole
of the N. E. ¼ of section 10 to Cyrus A. Kellogg. This
deed was recorded March 25, 1878, and purports to be in
consideration of $800. On March 4, 1878, a petition not
signed, but verified by Kellogg, was filed with the probate
court of Tuscola county, alleging:

1. That he, Cyrus A. Kellogg, the legal guardian of
said insane and incompetent person, Helen E. Tucker, is
the owner of the following real estate to wit: An
undivided half interest in the N. E. ¼ of section 10, in
the township of Juniata, in said county,—which said
interest in said real estate is worth $2,800; that said
Helen E. Tucker has no other property whatever.

2. That it would be for the best interest of his said

ward to have said real estate sold, and the proceeds thereof placed at interest.

3. That said ward is indebted to various persons to the amount of $1,400 or thereabouts, *and, in order to preserve her interest in said land, it is necessary to sell the same, and pay said indebtedness.*

Therefore he prays that he may be empowered and licensed to sell the real estate described according to the statute in such case made and provided.

A hearing was had before the probate court on the 1st day of April, 1878, and the court on that day, in consideration of the premises, ordered, adjudged, and decreed that Cyrus A. Kellogg, guardian as aforesaid, be and thereby was empowered, authorized, and licensed to sell, pursuant to the statute in such cases made and provided, the said real estate, "subject to all incumbrances, by mortgage or otherwise, existing at the time of the granting of this license, and *also subject to the right of dower and the homestead rights of the widow of said deceased therein.*" The court also ordered the guardian to give a bond in the penal sum of $4,000, with two sureties, and to give public notice of the time and place of such sale by posting up notices in three of the most public places in the township of Juniata, and also publish such notice in a newspaper printed in the county of Tuscola for six weeks successively next before such sale, and before making the sale to take the oath prescribed by the statute in such case, and further to make return of his doings to the court. Afterwards, on the 20th day of May, 1878, Kellogg filed a bond with Franklin Fairman and Simeon Wright as sureties, which was approved by the court on that day. He further gave notice of the sale to occur the 24th day of May, 1878, by posting notices in three public places in the township of Juniata on the 23d day of May, 1878, and made an affidavit of such posting on the 25th day of May, 1878. He also published a notice

in the Tuscola Advertiser six weeks, as required. On the 24th day of May, 1878, he acted as auctioneer, and sold the premises to the highest bidder, to ' wit, Simeon F. Wright, for the sum of $2,200, and made a report of such sale, and of his doings under the license, to the probate court, who duly confirmed the same by an order made on the 12th day of August, 1878. The deed to Wright was not executed until the 13th of February, 1879, as will be referred to hereafter.

On May 20, 1878, John M. Cole, as executor of the last will of Andrew Shultz, deceased, conveyed to Cyrus A. Kellogg, of Claridon, Ohio, the S. W. ¼ of the N. E. ¼ of section 10, township 12 N., of range 8 E., for $800, as appears by said deed.

On February 13, 1879, the guardian's deed was executed by Kellogg to Simeon F. Wright, and was recorded the same day, and on the same day Wright reconveyed to Kellogg individually the same premises for the same consideration, viz., $2,200, and this deed was recorded on the 17th day of February, 1879. On March 12, 1879, Kellogg conveyed by warranty deed the N. E. ¼ of section 10 to Jacob Truax, the defendant in this suit, for $4,800.

On March 1, 1888, Helen E. Tucker died intestate, leaving four children, viz., Mrs. Winter, Mary Griffiths, Susan Strong, and August Shultz. August Shultz Tucker died leaving no issue, nor father nor mother, him surviving. On January 19, 1889, Jabez Griffiths and Mary E. Griffiths conveyed by deed to Martha Winter and Susan M. Strong, the plaintiffs in this suit, all of their interest in the land in question.

Cyrus A. Kellogg may possibly have acted throughout without fraud, and for the benefit of his ward, but this record does not show it. So far as he, as guardian, conveyed to Wright, and Wright immediately reconveyed to

him, individually, for the same consideration, no title passed by the transaction. This case must be ruled by the case of *McKay v. Williams*, 67 Mich. 547. The whole record abounds with evidence of the efforts of Kellogg to get the legal title of this land in his individual name; and aside from the deed from Wright to him, which is void, his transactions would require very satisfactory evidence to explain why he assumed fiduciary relations with the estate of Helen E. Tucker, if he already had a valid title through Cole and Lewis.

Defendant's counsel urge that we should treat the deed to Lewis, and from him to Kellogg, as valid, inasmuch as it antedates the adjudication of insanity; but, aside from the facts apparent on the face of the deed, that Mrs. Tucker conveyed her whole interest in the undivided half of the N. E. ¼ to Lewis for $400, when it was worth more than 10 times that amount, we are only required to decide whether the charge of the court with reference to the guardian's deed to Wright, and from him back to Kellogg, is a correct instruction as to the law which should be applied to and govern the case. When the authority appears upon the face of the instruments, there is no presumption of honesty in a transaction by which the title of a *cestui que trust* is divested, and invested in the trustee.

The instructions of the court were erroneous, the judgment is reversed, and a new trial ordered.

The other Justices concurred.