## WILLIAM E. VEEDER, APPELLANT, V. MCKINLEY-LANNING LOAN & TRUST COMPANY ET AL., APPELLEES.

FILED JUNE 5, 1901. No. 9,361.

1. **License Granted at Chambers Must Be Filed with Clerk.** An order or license, to an administrator to sell real estate of an intestate, granted by a judge sitting at chambers, must be filed in the office of the clerk of the district court of the county in which letters of administration are issued, before the administrator is empowered and authorized to sell such real estate.

2. **Administrator Is Prohibited from Being a Purchaser at a Sale.** When an administrator is authorized to sell real estate belong-

ing to the estate he represents, he is prohibited by statute, in making a sale, from either directly or indirectly becoming a purchaser, in his individual right, of the property so sold by him as such administrator.

3. **The Word "Void" in a Statute Construed to Mean "Voidable."** It would seem that the statute declaring a sale so made to be void should be construed to mean voidable, and that such sale may be declared void in a suitable proceeding at the instance of any proper party in interest.

4. **The Rule of Caveat Emptor Applied to a Subsequent Purchaser of Real Estate at an Administrator's Sale.** A subsequent purchaser or mortgagee of real estate sold by an administrator is chargeable with notice of what is contained in the public records, evidencing the chain of title through which the party claims, and with all information imparted thereby; and where such records make it apparent that an administrator, in violation of law, was indirectly the purchaser of the property at such sale, and to whom the property was immediately transferred, or where the facts are sufficient to put an ordinarily prudent man on inquiry, such subsequent purchaser or mortgagee is not a good-faith grantee, for value, and without notice of the infirmity in the title held by his grantor.

5. **Statute of Frauds: EXPRESS TRUST: THOMAS v. CHURCHILL.** "A parol agreement by a grantee, to reconvey real estate to his grantor, is within the statute of frauds and does not create an express trust in such real estate in favor of the grantor." *Thomas v. Churchill*, 48 Nebr., 266.

6. **Real Estate Conveyed by Husband to Wife Is Presumed to Be an Advancement Passing the Title.** Where real estate is conveyed, or procured to be conveyed, by a husband to his wife, without pecuniary consideration on her part, the *prima facie* presumption of law is that it was intended as a gift or advancement, and that the parties intended that the full and absolute title, both legal and equitable, should pass together by the same conveyance.

7. **A Resulting Trust Will Not Be Presumed. The Burden Is Upon the One Claiming Its Existence.** A resulting trust will not be declared upon doubtful or uncertain grounds; and the burden is upon the one claiming the existence of the trust to establish the facts upon which it is based by clear and satisfactory evidence.

8. **Facts Do Not Prove It.** *Held,* That the evidence did not prove facts establishing a resulting trust.

9. **Subrogation: Lien.** The defendant, the Omaha Savings Bank, *held* to be entitled to be subrogated to the rights of the administrator

as a creditor of the estate to the extent of $396, the amount of an incumbrance on real estate belonging to the estate and costs of administration, and to have a lien upon such real estate for said amount.

APPEAL from the district court for Hall county. Heard below before THOMPSON, J. *Reversed.*

*Othman A. Abbott* and *Johnson & Wellman,* for appellants.

*W. H. Platt, W. R. Morris* and *Tibbets Bros., Morey & Ferris, contra.*

HOLCOMB, J.

Appellant, plaintiff below, brought an action in equity, under the provisions of section 57, chapter 73, Compiled Statutes of 1899, for the purpose of having adjudicated and determined the title and interest of several defendants to certain real estate, described in the petition, adverse to him, and to have the title thereto quieted in his favor, subject to the life estate of his father, as tenant by curtesy of his deceased wife, mother of the appellant.

Briefly, the salient features of the case may be outlined as follows: The plaintiff is the son and heir at law of Emma V. Veeder, deceased, who died possessed of a title in fee simple to the real estate which is the subject of the suit. Defendant Aaron B. Veeder was the husband of Emma V. Veeder, and is the plaintiff's father. The son arrived at his majority shortly prior to the commencement of the present action. It is averred, in substance, in the petition that after the death of the mother and wife, who died seized of the real estate therein described, leaving the plaintiff as her sole heir at law, and without any debts or other demands against the estate, that the defendant, Aaron B. Veeder, procured letters of administration of the intestate's estate to be issued to him, and thereafter filed against the estate a fraudulent and pretended claim in favor of himself, and obtained the allowance thereof as a legal and valid claim against the estate, and afterward made application to the dis-

trict court of Hall county, the county in which letters
of administration had been granted, for a license to sell
the real estate to pay the debt so allowed and the cost
of administration, which application was heard on an
order to show cause before a judge at chambers in an-
other county; that no license had been granted, and, if
granted, the same was void for want of jurisdiction. It
is further averred that thereafter a pretended sale of the
real estate was made to one Thomas J. Hurford for the
alleged consideration of $3,100, which the said Veeder
caused to be ratified and approved by the district court
of Hall county, and an administrator's deed executed and
acknowledged in favor of the said Hurford; that such
pretended sale was without consideration and was made
for the use and benefit of the administrator and in pur-
suance of a fraudulent design to defraud the estate out
of said real estate and to permit the administrator to
acquire title thereto in his own right; that on the subse-
quent day the said real estate was by the said Hurford,
the pretended purchaser, conveyed by warranty deed to
the said Aaron B. Veeder, without consideration and for
the purpose of cheating and defrauding the estate and
the plaintiff, as heir at law, out of his interest and estate
therein; that said two pretended sales were in pursuance
of a prior agreement between the said administrator and
the said Hurford, with the intent to defraud the estate
and the plaintiff out of his interest therein; that no re-
turn was made to the probate court, nor were any of
the proceeds of the sale ever accounted for; that after-
wards the said Aaron B. Veeder and his then wife con-
veyed one acre of said tract of land to school district
No. 15, of Hall county, defendant, which claims title
thereto by virtue of said deed of conveyance, which, it is
alleged, conveyed only the life estate of the said grantor
therein; that afterwards the said Veeder and his then
wife by mortgage deed conveyed unto the Omaha Sav-
ings Bank, defendant, said real estate for the considera-
tion of $1,000, and that said defendant secured thereby

only a lien on and interest in the life estate of the said grantor. It also appears that one D. L. Johnson, one of the defendants, claims some interest in the land by reason of his purchase of certain coupons for interest on the debt secured by the conveyance to the defendant, the Omaha Savings Bank; that afterwards another mortgage deed was executed on said real estate in favor of the defendant, Susan J. Fillion, for the consideration of $3,000 which, it is alleged, gave to the mortgagee no greater title to or interest in said land than the life estate of the grantor. The defendant, the McKinley-Lanning Loan & Trust Company, having obtained a judgment against Aaron B. Veeder, levied upon and sold the land as upon execution as the property of the said Veeder; but it is alleged that the said defendant thereby acquired no greater interest in said real estate than the life estate of the said Veeder, as against the plaintiff. Other persons appearing to have some interest in the land adverse to the plaintiff were made parties defendant; but their several interests need not be here further noticed.

The Omaha Savings Bank and Johnson answered, admitting the execution and delivery of the mortgage to them, denying that the plaintiff has any interest, right or title to the property in suit, or any part thereof, and denying the other allegations of the petition. By way of cross-petition they asked a foreclosure of their mortgage lien, which it is alleged was created to secure the payment of $1,000, money borrowed by the said Aaron B. Veeder, default having occurred in the conditions of the mortgage.

Defendant Fillion answered, admitting some of the formal parts of the petition and that after the death of Emma V. Veeder, Aaron B. Veeder was appointed administrator and administered upon said estate, and that the real estate in controversy was sold under order of court, and, in general, averring the regularity of the proceedings whereby the real estate was sold by the administrator to pay the debt allowed against the estate; pleaded

her mortgage for $3,000, alleged to have been given for borrowed money, loaned to the mortgagor, Veeder, and praying a foreclosure thereof. It is also pleaded by this defendant that the said real estate was in truth and in fact the property of the said Aaron B. Veeder, who by the proceedings of administration merely acquired title to his own property, and that the deceased held the legal title which she had obtained without consideration, and which she held as trustee for the use and benefit of her husband, Aaron B. Veeder, under an agreement to reconvey to him, which had not been effectuated prior to her death; that the land had been conveyed to her for the purpose of withdrawing the same from the creditors of her husband, who, it is alleged, was at the time financially embarrassed and unable to meet his obligations to his creditors; that one eighty acres of said tract of land was a government homestead, acquired by the said Aaron B. Veeder from the United States government, and the other was purchased and paid for by him and the title taken in the name of his wife; that she had no property or means, and that the conveyances were as to her wholly without consideration; that the husband had the possession and control of said real estate, made the improvements and paid the taxes accruing thereon. It is also alleged that after the death of the wife, the said Aaron B. Veeder, in order to more quickly facilitate the settlement of the estate, and to gain title to himself, as he was legally entitled thereto, had the proceedings of administration as set out in plaintiff's petition, but asserting that all of such proceedings were had in pursuance of law and equity and that nothing was done to defraud the plaintiff or any other person.

The other answer amounted substantially to a general denial, with a plea that the defendant was entitled to protection as a good-faith purchaser without notice and for value.

On the issues presented, the trial court found that at the time of the death of Emma Veeder she left the plain-

tiff and an infant child, who soon thereafter died, as her heirs at law, and that the title to the real estate in controversy was in her name; that the administrator's sale to Hurford was without consideration and for the purpose of placing the legal title of said property in the name of Aaron B. Veeder; that one eighty acres of land was taken as a homestead by the said Aaron B. Veeder and by him conveyed to his wife through the name of John Westley, without consideration; that the other eighty acres was purchased and paid for by said Aaron B. Veeder from John W. Irwin and conveyed to Emma Veeder without consideration from her; that said tracts adjoin each other and were occupied as a homestead by the said Aaron B. Veeder and Emma V. Veeder, at the time said conveyances were made to Emma V. Veeder and at the time of her death; that at the time said conveyances were made, the said Aaron B. Veeder was indebted to sundry persons, and such conveyances were made to hinder the creditors of Aaron B. Veeder in the collection of their debts; that the plaintiff resided with his father until attaining his majority, was schooled and clothed by him, and had no other benefit or consideration for any of the conveyances of said real estate. The court found in favor of the mortgagees and judgment creditor who purchased at execution sale; that the conveyances through which they claimed were made without any notice or knowledge of the manner or character of the conveyances between the said Thomas J. Hurford and the said Aaron B. Veeder, and were made in good faith, and that the liens and interests in the said premises acquired thereby were prior and superior to the plaintiff's right, fixing their relative order of priority and rendering a decree accordingly. From the decree so made the plaintiff appeals.

Assuming for the present that the deceased was the owner in her own right of the real estate to which she held the legal title at the time of her death, an orderly discussion and consideration of the case would seem to

suggest that attention first be given to the allegations
in the petition of fraud and irregularities with respect
to the method and manner of divesting the estate of the
title to the property in controversy, resulting, as con-
tended, in a pretended sale by the administrator which is
utterly null and void and ineffectual to pass any title
thereby as against the plaintiff, as sole heir at law of
the deceased.  We glean from the record that some time
after the appointment and qualification of the husband
of the deceased as administrator, he verified and pre-
sented a claim in his favor against the estate of which
he was administrator, in the sum of $627.50, which claim
was by the probate court approved and allowed as a
proper charge against the estate.  The order of allow-
ance was entered January 30, 1882, the claim having
been filed the third of the same month.  On the 14th of
February, following, a petition was filed by the admin-
istrator in the office of the clerk of the district court of
Hall county, praying for license to sell all of the real
estate of the intestate, describing it, which aggregated
about 170 acres, for the purpose of satisfying the claim
so allowed against the estate by the probate court of
said county.  After the publication of an order to show
cause why a license should not issue, and fixing the hear-
ing of the application before the judge of the district
court sitting at chambers in another county in the judi-
cial district, it seems a hearing was had at the time and
place stated, to wit, April 14, 1882, and a license or or-
der of sale appears to have been granted as prayed for.
After giving the bond and taking the oath as required
by statute, the administrator, acting ostensibly in pur-
suance of the authority conferred by a license issued by
the district court, sold or pretended to sell the real estate
and made report that, after advertisement of notice of
sale, the premises described were sold on May 27, 1882,
to Thomas J. Hurford for the sum of $3,100, which sum
so bid was subsequently paid into court.  The license to
sell, the oath of the administrator and the answer of the

guardian *ad litem* were never filed in the office of the clerk of the district court of Hall county, where letters of administration were granted and the proceedings to obtain license were initiated, until during the time of the trial of the present action. After the purported sale an administrator's deed was by the administrator executed in favor of Hurford, the alleged purchaser, on the 8th day of March, 1883. On the next day, the 9th day of March, Hurford, the grantee, and his wife by deed of general warranty conveyed all of said premises to Aaron B. Veeder in his individual capacity. In each of these instruments the expressed consideration is $3,100, the sum reported for which the land was sold. No further proceedings were had in the administration of the estate, and it does not appear that the administrator ever reported or made any effort to account for the proceeds of the sale.

That the attempted sale of the real estate in the manner by which it was brought about was in direct violation of the statute and in fraud of the rights of the estate and the plaintiff as heir at law, is indisputably established by the facts and circumstances surrounding the transaction, as shown by the evidence. The foregoing being the record, the chain of title, the *indicia* of ownership, through and under which the defendants claim, what are their rights in the premises under the subsequent conveyances by the grantor, Veeder? How are they affected by and charged with notice of the infirmities adverted to in the title of their common grantor, and can they be good-faith purchasers, entitled to protection as such, under the facts and circumstances disclosed by the record? At the threshold of the inquiry a very serious question arises as to the authority of the administrator to sell the land in controversy under any aspect of the case, because of failure to comply with the provisions of statute empowering an administrator to sell real estate belonging to the estate he represents. By section 339 of the decedents act, regulating the sale of real

estate, it is provided: "In all cases where the judge shall order a sale of any réal estate, while sitting at chambers, he shall make out, in writing, a copy of said order, and cause the same to be filed in the office of the clerk of said court, and said clerk shall thereupon record said order, in the record book of said court, before any sale shall be made as aforesaid." Compiled Statutes, 1899, ch. 23. If regard is to be had for the plain provisions of the section cited, authority to sell as in the present case is dependent on compliance with the requirement that "before any sale shall be made," the order of sale or license given shall, after allowance by the judge sitting at chambers, be filed in the office of the clerk of the district court where letters of administration are granted and by him recorded in the record book of said office. This provision, as it occurs to us, is of the substance of the proceedings required to be taken, and compliance with it essential to a valid sale. The authority of the administrator to sell real estate under a license granted at chambers is not established alone by the grant of the license, but it is further required that before the sale is made the order be filed in the office of the clerk of the district court as directed. This construction of the statute is given in *Stack v. Royce*, 34 Nebr., 833, wherein it is held that the petition and license must be filed in the office of the clerk of the district court of the county in which administration was granted. The precise point decided was that an administrator was without authority to sell real estate of the intestate unless the petition and license therefor granted at chambers were filed in the office of the clerk of the district court of the county in which administration was had upon the intestate's property, rather than in the county in which the land was situated, as was done in that case. Says NORVAL, J., writing the opinion: "Looking to the proviso clause of section 339 of said chapter 23, it will be seen that in all cases where a judge of the district court orders a sale of any real estate while sitting at chambers, it is made his

duty to cause a copy of the order to be filed in the office
of the clerk of the district court, 'and said clerk shall
thereupon record said order in the record book of said
court before any sale shall be made as aforesaid.' It
would be a strange proceeding to require the order to
be recorded, and yet not preserve the petition, the juris-
dictional paper upon which the license and all subse-
quent proceedings are based. That such petition must
be filed and preserved by the clerk, we have no doubt."
And further on it is observed: "But the defects relied
on in the case before us are not mere irregularities, but
go to the jurisdiction. If the petition of the adminis-
trator for a license had not been filed, and the license
and subsequent proceedings thereunder had never been
recorded, in any district court of the state, we do not
think it would be contended that the sale and admin-
istrator's deed were valid." But it is contended that
confirmation of the sale made by the administrator cured
the irregularity in not filing the order of the judge made
at chambers, because of section 119 of the decedents
act, enumerating what will and what will not avoid a
sale for irregularities. We do not think the failure to
file in the proper office the license to sell comes within
the provisions of statute of irregularities merely, which
will not avoid a sale. The non-compliance with the
statute goes to the jurisdiction, and involves the au-
thority of the administrator to act. The license to sell
is in law incomplete, as an expression of the court em-
powering the administrator to act, until it is made a
part of the records of the court in which it is required
to be filed. The court or the judge sitting at chambers
speaks only through the court records, and the license is
ineffectual to confer authority until made a part of the
records. In the case last referred to, in a concurring
opinion by Post, J., it is pertinently remarked: "I take
it to be an elementary rule of evidence that judicial pro-
ceedings are proved by their records only, or, in the
language of Mr. Greenleaf, a judgment is 'the only proper

and legal evidence of itself.' (1 Greenleaf, Evidence,
538.) In this case, the authority of Hammond, the ad-
ministrator, to sell the land must appear of record. It
must be proved by a record which the law authorizes
to be kept." The essential requirements of the statute
not having been complied with, the administrator was
without authority even to make the attempted sale which
he engaged in; and if such be the case, a subsequent
grantee or mortgagee can not, we assume, be a purchaser
in good faith. There was an entire absence of any record
evidencing authority to sell. The merest inspection of
the record, at the time appellees claim to have acquired
title to and an interest in the land in controversy, and
of which they are charged with notice must exist, would
have disclosed that the administrator had not proceeded
according to law in the sale of the property to which
they claim title by a conveyance subsequent thereto.

We pass next to the second point, and a question of
equally vital importance in the disposition of the case. In
the attempted sale by the administrator of the real es-
tate in controversy, under the license granted and the
deed of conveyance made in pursuance thereof, it is made
manifest, and beyond serious doubt, that no *bona fide*
sale to the nominal purchaser was ever in fact made;
that Hurford in truth never bought the property or paid
any consideration therefor; that the sale to him was
colorable only, and a device and scheme to obtain the
title thereto by the administrator in his own name, and
to whom the nominal purchaser on the day following
deeded the land; both of such conveyances on the next
day being filed for record in the office of the recorder of
deeds at exactly the same hour and minute, and evi-
dently by the same person. Hurford, in his testimony,
says he did not buy the land; that he paid nothing; had
nothing to do with the transactions, save as he was made
the instrumentality by which the title to the property
was acquired by the administrator in his own name; and
that he understood that this was the only object to be

accomplished by the conveyances in which his name appeared as grantee and grantor respectively. The conclusion, therefore, is irresistible that in so far as there was a purchase of the property by any person under the purported sale made by the administrator, he himself was the purchaser. Section 85 of the chapter providing for the sale of real estate of a decedent declares that "the executor or administrator making the sale   *   *   * shall not directly or indirectly purchase, or be interested in the purchase of any part of the real estate so sold; and all sales made contrary to the provisions of this section shall be void." To give the section quoted a literal construction, and hold the sale made by the administrator and the deeds made in pursuance thereof void and of no force and effect in the strict legal sense of the term, would end the discussion of the case and render further consideration unnecessary. If the sale is void *in toto*, and not merely voidable, the titles acquired by the defendants by their subsequent conveyances must fall to the ground and leave them without standing upon which to base the relief demanded. Whether the section shall be so construed may be said to be an open question in this state. Whether the legislature intended that a sale so made should be utterly void may not be entirely free from doubt. It has been frequently and well said that the terms "void" and "voidable" are frequently used interchangeably, and that the word "void" is often so used when the act so characterized is intended to be voidable only. It may, we think, well be doubted whether the legislature intended that a sale made in the manner condemned by the section quoted should be, for all purposes, void and as though it had never taken place. The purposes intended and objects to be accomplished, and the legislative will with respect thereto, can probably be better enforced and carried out by construing the word as meaning "voidable," and the action condemned held void upon the application of any proper party in a suitable action, as against all who may rightfully be charged

with the wrong-doing, excepting only innocent, *bona fide*, subsequent grantees or mortgagees.  *Melms v. Pabst Brewing Co.*, 66 N. W. Rep. [Wis.], 518, and cases therein cited.  We do not, however, finally decide the question, preferring, in the present case, to base our conclusions on the assumption that the sale, under the circumstances, is voidable only, and that only those who claim subsequently to the voidable sale with notice, of facts of which they are charged, and not as good-faith grantees or mortgagees, are to be affected by the acts upon which the sale may be declared void.  This leads us directly to the question of whether the subsequent mortgagees and the purchaser at the execution sale of the land as the property of Aaron B. Veeder, may be exempted from the force and effect of the fraudulent and void acts of the administrator in attempting the sale of the land to himself as an individual, while acting as the administrator of the estate in making a sale under the order of court.

It is repugnant to every sense of justice and honesty of transactions between individuals, to permit a person occupying a trust relation to deal with the subject of the trust in such manner as to permit his selfish and personal interest to be brought in conflict with the duties imposed in the faithful execution of the trust.  The purchase by an administrator for his own use of the property of the estate he represents, and the occupation by him of the dual position of seller and buyer, contravenes a policy founded in wisdom and based on the application of sound principles of law.  The courts have universally condemned such acts from time immemorial, and legislatures have set their seal of disapproval thereon by statutory enactments declaratory of the common law on the subject.  An instructive discussion of the underlying principles, which may be considered with profit, is found in *Michoud v. Girod*, 45 U. S., 502, 552, wherein Mr. Justice Wayne, of the United States supreme court, has with much perspicuity stated the rule and policy of the law with respect to such transactions.  The sale of the

real estate in question having been made in contravention of the express provisions of the statute, and being for that reason void, it remains to be seen whether the subsequent mortgagees and purchaser at execution sale may be regarded as good-faith purchasers and entitled to protection as such, or whether they are in no better position than their grantor. To reach the conclusion that they are shielded from the consequences of the prior illegal transactions of their grantor, we must hold that not only were they acting in good faith and with good motives sanctioned by law, but also that the circumstances attending the transactions, whereby they became the creditors of the grantor and accepted a conveyance from him of the real estate in controversy, were not such as to put them on inquiry and charge them with notice of the defective title arising from the unwarranted acts of the administrator respecting the sale of the property of the estate of the intestate. The conclusion is overwhelming that if they in fact were not aware of the defective title of their grantor, they were possessed, or could have been possessed by reasonable diligence, of such information; and their failure to obtain the same must be attributable to their own want of observance of care and caution about a business transaction, of the importance of the one they engaged in, which an ordinarily prudent person would display under similar circumstances. Let us see what their position was. They were negotiating loans to the ostensible owner of the land in controversy on the faith of the security of the mortgages executed by him. Their security depended upon his ownership of the land. The evidence of his title thereto was a matter of record open to the inspection of all, and of which they were by law charged with constructive notice. An examination of his title discloses that his wife died intestate, seized of the land; that he was appointed administrator; that a claim of $627.50 was allowed in his favor as a proper charge against the estate; that a petition had been filed by him as administrator for license to

sell the real estate of the deceased to pay the debt as aforesaid; that no license, so far as the record discloses, had ever been issued, and that the statute requiring the petition and order to sell real estate to be filed in the office of the clerk of the district court of the county where letters of administration had been granted, had not been complied with, and no sufficient authority appeared for the sale thus made; that the property was sold —apparently on the day it was advertised to be sold—to one individual for the expressed consideration of $3,100; and on the next day, for the same expressed consideration, the property was conveyed to the administrator as an individual, who by law was prohibited, either directly or indirectly, from purchasing the property which he was charged with the duty of selling to the best advantage and in the interest of the estate of which he was a trustee; and that both deeds were filed for record at the same time, and the title thus conveyed to one who, by positive enactment of law, is forbidden from buying. Can mortgagees, under such circumstances and in the face of a record pointing so conspicuously to fraud and wrong-doing, be said to hold title free from the consequences of such acts, and as *bona fide* grantees? There can be but one answer, and that is in the negative.·

In *Bachelor v. Korb*, 58 Nebr., 122, a case where the proper application of the rule as to notice imported by the public records to subsequent purchasers was under consideration, and where the questions involved are analogous to those in the case at bar, it is held: "The rule of *caveat emptor* applies to a purchaser at a guardian's sale of the real estate of his ward. * * * But the defendants in error, though they may have paid a valuable consideration for this real estate, are not innocent purchasers of it. One who purchases real estate at a guardian's sale, or purchases from the vendee of that sale, must take notice at his peril of the authority of the guardian to make the sale. The doctrine of *caveat emptor* applies to purchasers at guardians' sales. * * * We are not deciding

that where a guardian's sale is absolutely void that any-one can be protected as an innocent purchaser for value of the real estate sold; but what we do say is that, if these defendants in error are to suffer a loss, it is the result of their own negligence.  There was enough upon the face of this record to have deterred any prudent man from investing his money in this property."

The supreme court of Michigan, in the case of *McKay v. Williams*, 67 Mich., 547, holds to the same rule, as is indi-cated by a paragraph of the syllabus in that case, in which it is stated: "In such a case, a purchaser of the land from the attorney in fact is not a good-faith pur-chaser, but is bound by what appears in the chain of title through which he claims, and is chargeable with the fraud which appeared upon the face of the conveyances." Of the same tenor are the following: *Winter v. Truax*, 87 Mich., 324; *Michoud v. Girod, supra.*

It is, however, pleaded in the answer and cross-petition of the appellee, Fillion, and argued in brief of counsel, that the real estate in controversy in fact belonged to Aaron B. Veeder, who was the equitable owner thereof; that his wife, in her lifetime, held the legal title only in trust for his use and benefit; and that even though the proceedings by which he acquired the legal title from the estate were unauthorized, appellee, having in good faith relied upon his title being sufficient, should be protected as the grantee of his beneficial interest in the land by virtue of his alleged equitable ownership.  We are unable to give our assent to this view of the case.  Conceding for the moment, and for the present purpose only, that the administrator was the equitable owner when the wife died, we can not bring ourselves to believe that he or his grantees can be heard to defend the title acquired through the void proceedings mentioned, by asserting an equity in the administrator prior thereto.  His every act as administrator of the estate is utterly repugnant and inconsistent with the idea that he was the equitable owner of the land.  He can not, under fundamental prin-

ciples relating to those acting in a fiduciary capacity, after accepting the trust and administering the property as belonging to the estate, be heard to say that he acted fraudulently for the purpose of gaining a personal advantage over the estate he represented. He can not profit by his own wrong or deny the title to the real estate which by his every act he has solemnly declared belonged to the estate and not to himself. As an individual, he presents a demand against the estate in his favor for a specified sum of money, and as administrator, he applies for and obtains a license to sell the real estate as the property of the intestate to satisfy the demand, and indirectly becomes the purchaser thereof. His grantee now seeks to defend the title thus acquired, on the ground that he was the equitable owner and obtained by the proceedings mentioned only that which belonged to him. It must be borne in mind that the administrator acted with full knowledge of all the facts regarding his alleged equitable title. He deliberately chose the course of conduct adopted and followed, and now to permit him, or those claiming under him, to deny the title of the estate and claim through another source, is to invite and sanction a course of wrong-doing contrary to law and good morals. Assuming for the purpose of argument that the administrator's sale was valid and passed a good title to the purchaser and the present contest was between the heir or a creditor of the estate on the one side and the administrator or those in privity with him on the other, over the proceeds of the sale, would it be seriously contended that the administrator could lay claim to the proceeds on the ground that he was the equitable owner of the land? And yet, as between him and his grantees and the appellant, as sole heir at law, the same principle is contended for in the case at bar. We do not think it can be sustained. The administrator must be held to be estopped by his own acts from now setting up a claim to the property in his own right. The appellee, as grantee, claiming under and by virtue of the title ac-

quired by the administrator in the attempted sale of the property, in the manner mentioned, is in no better position to urge the equitable claim of the administrator than he is, and is bound by the rule of estoppel to the same extent. They each are now estopped from asserting the alleged equitable title as against the heir of the deceased. In Herman on Estoppel and Res Adjudicata, section 1125, it is said: "An estoppel *in pais* may arise from the acts of an administrator and be set up against him. Thus an administrator, who finds property among the assets of the estate, and takes possession of it as the property of the estate, and sells it, having no claim to it himself, it not being claimed by any other person, is estopped from setting up a claim adverse to the estate, and is liable to the estate for the property thus sold." The following authorities are also cited in support of the conclusion reached on the point of estoppel: *Irby v. Kitchell*, 42 Ala., 438; *Miller v. Wilkins*, 4 S. E. Rep. [Ga.], 261; *Henderson v. Segars*, 28 Ala., 352; *White v. Swain*, 3 Pick. [Mass.], 365.

Eliminating entirely the question of estoppel and passing directly to the proposition of the existence of a trust in the real property in favor of the husband of the deceased, we think this proposition must, under the evidence, also be resolved against the appellee, Fillion. If an express trust is sought to be established under the alleged agreement of the deceased to reconvey to her husband, then the agreement, resting in parol, comes within the statute of frauds and is ineffectual to create an express trust. *Thomas v. Churchill*, 48 Nebr., 266. If the existence of a resulting trust is relied on, then the evidence is insufficient to raise the legal presumption of such a trust, even though it be conceded, as was found by the trial court, that the conveyances by which the deceased acquired the legal title were without a valuable or money consideration on her part. If made to defraud the creditors of the grantor, the instrument would be valid as between the parties, and a court of equity would not

lend itself to grant relief to the parties from the conse-quence of their fraudulent acts. This could only be accomplished by the creditors of the grantor who were such at the time of the making of such fraudulent conveyances. If a homestead and not subject to fraudulent alienation, the grantee being the wife of the grantor, the *prima facie* presumption of law is that it was intended as a gift or advancement, and that the parties intended that the full and absolute title, both legal and equitable, should pass together at the same time and by the same conveyance. Underhill, Trusts & Trustees, art. 23, p. 160, and cases cited; 1 Perry, Trusts, sec. 164, 165, and authorities cited. There is no competent evidence in the case to rebut the legal presumption that the conveyances passed to the deceased all the title held by her grantors, or warrant the inference of a resulting trust, justifying a decree in favor of the appellee under the issue raised in that regard. The defendant, Veeder, testified that the property belonged to his deceased wife and not to himself. His acts as administrator were consistent with her ownership and not his. His attempt to obtain title to the property in the manner stated, while possibly it may be said was because he considered himself the equitable owner, and adopted such means to acquire title, we are of the opinion can not be construed as evidence in his favor for the purpose of establishing his alleged ownership. There is no other evidence, save the mere want of consideration on the part of the deceased at the time the property was conveyed to her, that will justify the conclusion that a resulting trust was created in favor of the husband, and this we think entirely insufficient. The security and stability of titles to real estate requires that the property shall not be impressed with an unrevealed trust upon doubtful or uncertain grounds; and the burden is upon the one claiming the existence of the trust to establish the facts upon which it is based, by clear and satisfactory evidence. This, in the present case, has not been done.

The appellee, the Omaha Loan & Trust Company, claims

that it should be subrogated to the rights of the administrator, Veeder, as a creditor of the estate as to the amount of the claim allowed in his favor as a just debt against the estate. We do not think this can upon legal grounds be done as to the indebtedness claimed for repairs and improvements upon the real estate and the interest on the incumbrance thereon. As to these items, it was the legal duty of the life tenant himself to pay by reason of his tenancy. 1 Washburn, Real Property [5th ed.], 129, secs. 24a, 25a; Tiedeman, Real Property, 66, 68. The mortgage was a valid incumbrance on the estate of the appellant, and its satisfaction was probably obtained by the loan made by the mortgage company. In any event, under the pleadings and the evidence, we are disposed to the view that to the extent of the face of the mortgage and the cost of administration the right of subrogation exists; and a lien in their favor for the sum of $396 should be adjudged accordingly.

It also appears from the record that at the time of the death of the owner of the land in controversy she left surviving her two children, the appellant and one other, who soon thereafter and in infancy died. Under the provisions of the sixth subdivision of section 30, chapter 23, Compiled Statutes, entitled "Decedents," the surviving brother succeeded to the inheritance of all the real estate of the deceased parent, subject only to the life estate of the father as tenant by curtesy. *Burke v. Burke*, 34 Mich., 451; *Runey v. Edmands*, 15 Mass., 291; *Estate of De Castro v. Barry*, 18 Cal., 97. We are aware that the view thus expressed is not in harmony with the opinion in *Shellenberger v. Ransom*, 31 Nebr., 61, and same case on rehearing, 41 Nebr., 631. In that case, however, this provision of the statute was entirely overlooked; and, in the face of the plain statutory enactment, the case can no longer be considered authority.

Our conclusions are that the sale made by the administrator, by which he became the indirect purchaser of the property, is fraudulent and void, and that the subse-

quent mortgagees and purchaser are not entitled to protection as good-faith grantees.   We also conclude that the appellee, the Omaha Savings Bank, is entitled to be subrogated to the rights of the administrator as a creditor of the estate to the amount of $396, the same being the principal sum of the incumbrance on the land in controversy, and costs of administration, which is a valid lien on the property; that the mortgagees and purchaser at execution sale have acquired, by the conveyances under which they claim, and in the order of priority as decreed by the trial court, only the interest and title had and held by the said Aaron B. Veeder in said property, to wit, a life estate as tenant by curtesy, and that the plaintiff should have the title to the property quieted and confirmed in him subject to the rights and interests of the appellees therein as heretofore indicated.

The findings and decree of the trial court are reversed, and the cause remanded for further proceedings in harmony with the views herein expressed.

REVERSED AND REMANDED.

SULLIVAN, J., concurring.

While concurring in the judgment of reversal, I express no opinion on the question of estoppel.