## COOPER v. BURNS et al.

### (Circuit Court, D. Nebraska. November 11, 1904.)

#### No. 111.

1. GUARDIAN AND WARD — VALIDITY OF SALE OF LANDS — PURCHASE FOR GUARDIAN.

   Under Comp. St. Neb. 1903, c. 23, § 85, which prohibits an executor, administrator, or guardian from becoming the purchaser of any real estate sold by him for the estate in his charge, and provides that any sale made contrary to its provisions shall be void, but that it shall not prevent any such purchase by a guardian for the benefit of his ward, a sale of land by a guardian to one who purchases for the guardian and at once conveys to him for the same consideration is absolutely void as against all persons who do not come under the designation of innocent purchasers. The fact that the proceeds of the sale are used for the support of the wards does not make the purchase one for their benefit within the meaning of the statute.

2. SAME — INVALID SALE — INNOCENT PURCHASER.

   A guardian sold land of his wards under an order of court, and on confirmation executed a deed to the purchaser, who on the same day conveyed the land to the guardian, the two deeds reciting the same consideration and being recorded at the same time. The purchase was in fact made for the benefit of the guardian, and was void under the statute. *Held*, that the record disclosed such facts as to put a subsequent purchaser on inquiry, and that a mortgagee from the guardian was not protected as an innocent purchaser.

3. SAME — ATTACKING VALIDITY OF SALE — ESTOPPEL.

   The fact that the proceeds of a guardian's sale of lands were applied to the maintenance of the minor wards does not estop them from asserting title to the land on the ground of the invalidity of the sale.

4. MARRIED WOMEN — CONVEYANCE OF SEPARATE ESTATE — COVENANT OF WARRANTY.

   Under Comp. St. Neb. 1903, c. 53, § 2, which provides that a married woman may sell and convey her real estate and personal property and enter into any contract with reference to the same in the same manner and with like effect as a married man may in relation to his real and personal property, where a married woman joined with her husband in a mortgage of land in which she had a vested estate for life, she is estopped by general covenants of warranty therein from asserting that an after-acquired title to the fee did not inure to the benefit of the mortgagee.

In Equity.   Suit for foreclosure of mortgage.

Flansburg & Williams, for complainant.

George H. Thomas and A. M. Post, for respondents.

MUNGER, District Judge.   The material facts necessary to a proper consideration of this case are as follows:

In July, 1877, one Daniel Foley died intestate, seised in fee of real estate in Platte county, Neb., occupied by himself and family as a homestead, described as the northwest quarter (N. W. ¼) of section thirteen (13), township ten (10) west, of the sixth P. M., excepting the east quarter (E. ¼) of the northwest quarter (N. W. ¼) of said section, containing 150 acres, more or less, according to government survey.   Said Foley left surviving him as his sole heirs at law his widow, Mary Foley, and two minor children, named Jeremiah Foley and Mary Foley.   Subsequently, and in the year 1883, said widow intermarried with the respondent, Martin Burns, and on August 27, 1883, said Martin Burns applied to the county court for appointment as guardian of said minor children, to wit, Jeremiah Foley, then aged seven years, and Mary Foley, then aged six years, and such proceedings were had in the county court that said Martin Burns was appointed such guardian in October, 1883, and he duly qualified as such in January, 1884.   In February, 1884, Martin Burns, as such guardian, petitioned the district court of Platte county for a license to sell the interest of said minors in said real estate; license was granted; and said guardian afterwards reported to said district court that he had on June 12, 1884, sold the interest of his wards, said minors, in said real estate for the sum of eleven hundred dollars ($1,100) to one James Cooney; and on June 20, 1884, said sale was by the court confirmed, and the said guardian directed to execute a deed to said James Cooney. On June 23, 1884, Martin Burns, as guardian, made his deed to James Cooney, and on the same day said James Cooney by deed reconveyed the said premises for the same stated consideration to said Martin Burns.   Both of said deeds were filed for record on the 3d day of July, at the same hour.   No consideration passed between Martin Burns and James Cooney for said deeds, but said estate was purchased by James Cooney at said guardian sale pursuant to an agreement entered into between him and said Martin Burns that he, James Cooney, should purchase the same for and on behalf of said Burns.   March 4, 1889, Martin Burns and wife executed and delivered to the Globe Investment Company, for a consideration of eighteen hundred dollars ($1,800) paid to Martin Burns, a note, with interest coupons, secured by a mortgage upon the real estate before mentioned, which mortgage contained, among other things, the following statements and covenants:

"This indenture made on the 4th day of March, in the year of our Lord one thousand eight hundred and eighty-nine, between Martin Burns and Mary Burns, his wife, of the County of Platte, and State of Nebraska, parties of the first part, and the Globe Investment Company, a corporation established under the laws of the Commonwealth of Massachusetts and having its principal place of business in Boston in the County of Suffolk and said Commonwealth, party of the second part.

·"Witnesseth: That said party of the first part in consideration of Eighteen Hundred Dollars, paid by said party of· the second part, the receipt whereof

is hereby acknowledged, do hereby grant, bargain, sell and convey unto the said party of the second part and its successors and assigns forever, all the following described tract, piece or parcel of land situate in the County of Platte, and State of Nebraska, to-wit:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"To Have and to Hold the same with all and singular the emblements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, unto the said party of the second part, and its successors and assigns forever, and the said parties of the first part do hereby covenant and agree that at the delivery hereof they are the lawful owners of the premises above described, and are seized of a good and indefeasible estate of inheritance therein, free and clear of all incumbrances; and that they will warrant and defend the same in the quiet and peaceable possession of said party of the second part and its successors and assigns against the lawful claims of all persons whomsoever."

—And at the same time executed a second mortgage to said Globe Investment Company upon the same real estate to secure the sum of one hundred and eighty dollars ($180), which second mortgage recited that it was subject to said first mortgage of eighteen hundred dollars ($1,800). At the time the Globe Investment Company made said loan and took said mortgage, it had actual knowledge of the proceedings had in both the county and district courts relative to the before-mentioned proceedings, and the record of said deeds from Martin Burns, guardian to James Cooney, and from James Cooney to said Martin Burns, but did not have actual knowledge of the agreement between Martin Burns and James Cooney that such purchase by James Cooney was for the benefit of said Martin Burns, or that said conveyances were without consideration. March, 1889, said Globe Investment Company transferred said note and mortgage for eighteen hundred dollars ($1,800) to one Percival Burney, and indorsed said second note and mortgage for one hundred and eighty dollars ($180) in blank. In March, 1892, said Martin Burns filed in the county court of Platte county an account and report of his acts and doings as such guardian, in which report he charged himself with eleven hundred dollars ($1,100) as the proceeds of the sale of the interest of his wards in said real estate, and credited himself with the sum of two hundred and sixty-five dollars and forty-five cents ($265.45), prior incumbrance on said land paid off, and seventy-five dollars ($75) attorney fees, and for the keeping, clothing, and maintenance of said minors a sum exceeding the remainder of said eleven hundred dollars ($1,100) and interest thereon, which report was examined and approved by the county judge. In June, 1892, one J. Lowell Moore, as trustee, brought an action in the district court of said Platte county to foreclose said second mortgage of one hundred and eighty dollars ($180). Martin Burns, Mary Burns, the Globe Investment Company, and other subsequent lien holders were made parties. defendants. The Globe Investment Company filed its answer therein, setting up said first mortgage of eighteen hundred dollars ($1,800), claiming it to be a first lien on said premises, but that it was not desirous to have said first mortgage foreclosed, and that any decree to be entered directing a sale should be subject to the lien of said first mortgage. Such proceedings were had in said action that a decree of foreclosure and order of sale was entered in the usual form, but finding that said mortgage of eighteen hundred dollars ($1,800) was a first lien on said premises, and that a sale under said decree should be

subject thereto. An order of sale was issued, and the sheriff advertised said premises to be sold under said decree, but before sale said minors, Jeremiah Foley and Mary Foley, by their next friend, W. R. Ellis, brought an action in the district court of Platte county against all the parties to the said foreclosing action, joining with them the sheriff, praying that the guardian sale from Martin Burns to James Cooney be set aside, the license issued to said Martin Burns as guardian be revoked, that the two several mortgages to the Globe Investment Company be canceled and decreed no lien upon the premises, that the title be quieted in said minors as against all the defendants, and for a perpetual injunction forever restraining the enforcement of said decree against said real estate. Defendants J. Lowell Moore and the Globe Investment Company appeared to said action and filed their joint answer therein. Upon the final hearing of said action it was decreed that the guardian sale of the interest of said minors in said real estate was fraudulent and conveyed no title; that the mortgage was only a lien upon the life estate of Mary Burns; and enjoined the sale under said decree of any greater interest in said premises than the life estate of said Mary Burns. At the time of the institution of said foreclosure suit, as well as the injunction suit on behalf of said minors, the eighteen hundred dollar ($1,800) note and mortgage was owned and held by Percival Burney, who purchased the same in March, 1889, and held the same until May 30, 1894, and was not a party to either of said actions. In May, 1894, Burney exchanged said eighteen hundred dollar ($1,800) note and mortgage with the Globe Investment Company for certain of its debenture bonds, and assigned said note and mortgage to one John Herbert, trustee, as security for such debenture bonds, with others of the same series. May 5, 1896, Mary Foley, having attained her majority, executed a quitclaim deed to said real estate to one Jeremiah Grady, and on the 27th of March, 1897, said Grady conveyed the same by quitclaim deed to said heir Jeremiah Foley. On October 24, 1899, said Jeremiah Foley died intestate, leaving no issue or children, his mother, Mary Burns, and his sister, Mary Foley, being his sole heirs. November 2, 1900, Mary Burns conveyed all her interest in said real estate to Mary Foley. October 27, 1902, said Mary Foley, then by reason of her marriage named Mary Dill, conveyed said real estate to the respondent, Blake Maher. Said Blake Maher in February, 1903, executed a declaration of trust to the effect that he held the same in trust for said Mary Burns, upon the payment by her of the sum of nineteen hundred dollars ($1,900). Complainant holds said eighteen hundred dollar ($1,800) note and mortgage as trustee successor to the trust first held by John Herbert, and has brought this action to foreclose said mortgage, claiming the right to have the same enforced as a lien, not only against the life estate of Mary Burns, but the entire fee of said land.

The foregoing are the facts which I regard as essential to a proper determination of the rights and equities of the respective parties.

The legal and equitable questions presented for determination are: First. What title or estate, if any, did Martin Burns acquire in the premises by virtue of the guardian sale to James Cooney, and the conveyance by James Cooney back to said Burns? Second. The proceeds

of such guardian sale having been used for the benefit of the minors, and the guardian's account in that respect having been reported to and approved by the county court during the wards' minority, are the minors estopped to impeach such guardian sale? Third. Is complainant an innocent purchaser or mortgagee, or is he chargeable with notice of the invalidity of such guardian sale? Fourth. Did the fact that Mary Burns had a present vested life estate in said lands at the time she executed complainant's mortgage, and that said mortage contained the before mentioned covenants as to title, extend the lien of complainant's mortgage to her after-acquired title to the remainder? Fifth. Mary Burns, at the time of the execution of complainant's mortgage, having an existing vested life estate in the mortgaged premises, is she now estopped by virtue of the covenants in the mortgage from asserting that such mortgage is not a lien upon the entire fee estate?

Section 85, c. 23, Comp. St. Neb. 1903, which was in force at the time said guardian sale was made, is as follows:

"The executor or administrator making the sale and the guardian of any minor heir of the deceased shall not directly or indirectly purchase or be interested in the purchase of any part of the real estate so sold; and all sales made contrary to the provisions of this section shall be void; but this section shall not prohibit any such purchase by a guardian for the benefit of his ward."

Whether the term "void" as used in the statute shall be held to mean voidable only, I regard in this case immaterial. Before said minors became of age, an appropriate proceeding in equity was brought in their behalf to declare the sale void and of no effect, and the court so decreed. It is true that Burney, the then owner of the note and mortgage sought to be foreclosed in this action, was not a party to that proceeding and not bound by the judgment therein, but it was an act of disaffirmance on behalf of the minors, and their conveyances upon reaching the age of majority were a disaffirmance of the sale on their part. I think, however, the proper construction of the statute, when applied to the facts in this case, is that such sale should be absolutely void as against all persons who do not come under the designation of innocent purchasers. Such I think the general rule (Frazier v. Jeakins (Kan. Sup.) 68 Pac. 24, 57 L. R. A. 575; Winter v. Truax, 87 Mich. 324–349, 49 N. W. 604, 24 Am. St. Rep. 160), and such I think the effect of the holding of the Supreme Court of this state in Veeder v. Loan & Trust Co., 61 Neb. 892, 86 N. W. 982.

It is strenuously argued on the part of the complainant that the section of the statute above quoted permits the purchase of real estate at guardian sale by the guardian for the benefit of the ward; that, as the proceeds of the sale were to be used in the discharge of existing liens and for the maintenance of the wards, such purchase was for their benefit. I do not so construe the section of the statute. There is a vast difference between a sale and a purchase for the benefit of the wards. It is probable that in this instance the sale was for the benefit of the wards, but I am unable to see how the purchase by the guardian under the circumstances was for the ward's benefit. On the contrary, I think the whole transaction shows that the purchase was for the sole benefit of the guardian. There may be, and doubtless are, instances

when it would be for the benefit of a minor to have the estate purchased by the guardian for their use. In such a case the title would be held by the guardian as trustee for the ward, and the trustee would not be authorized to convey or mortgage the property without permission of the court, and in no event for his own personal benefit, and, if the complainant supposed that the property was so purchased by the guardian, he was bound to ascertain the authority to execute the mortgage in question.

Complainant and all persons dealing with the mortgage in question were chargeable with whatever notice the records relating to the title to the land imparted, and the Globe Investment Company had actual knowledge thereof. The records at least were sufficient to put a person upon inquiry as to the dealing between the guardian and Cooney, and, had such inquiry been made, the fraudulent character of the transaction would have been disclosed. But it is said on behalf of the complainant that Martin and Mary Burns by their covenants stated they were the owners of the estate in fee, and Cooney had died, so no further inquiry would have disclosed the real facts. The representations in the covenants were not representations as to the real transaction between Burns and Cooney, they were not representations as to whether the purchase by Cooney was in pursuance of an agreement with the guardian that such purchase should be made by Cooney for the benefit of Burns; they were only representations of the legal effect of such transaction. I think the records disclosed such a state of dealing between the guardian and Cooney as deprives complainant of any benefit as an innocent purchaser. Bachelor v. Korb, 58 Neb. 122, 78 N. W. 485, 76 Am. St. Rep. 70; Veeder v. Loan & Trust Co., 61 Neb. 892, 86 N. W. 982; Frazier v. Jeakins (Kan. Sup.) 68 Pac. 24, 57 L. R. A. 575; Winter v. Truax, 87 Mich. 324, 49 N. W. 604, 24 Am. St. Rep. 160; McKay v. Williams (Mich.) 35 N. W. 159, 11 Am. St. Rep. 597; Stebbins v. Duncan, 108 U. S. 32, 2 Sup. Ct. 313, 27 L. Ed. 641. The fact that the proceeds of the guardian sale were applied for the maintenance and support of the minors does not estop them from asserting title to the land on account of the invalidity of the guardian sale (Rowe v. Griffiths, 57 Neb. 488, 78 N. W. 20; Bachelor v. Korb, supra) the general rule being that parties under disability are not estopped unless their conduct has been intentional and fraudulent, and in this case there was no act on the part of the minors which had a tendency to mislead any one.

By the married woman's act (section 2, c. 53, Comp. St. Neb. 1903) it is provided:

"A married woman, while the marriage relation subsists, may bargain, sell and convey her real estate and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property."

There can be no doubt under this statute that a married woman may in a conveyance of her own separate estate bind herself by covenants of warranty as to the title to as full an extent as though she were single, even though her husband should join with her in such conveyance. But a married woman is not bound on the covenants contained in a

deed which she executes with her husband in conveying his estate for the purpose of releasing her inchoate right of dower. Though such deed on its face does not show whether the estate conveyed is that of her husband or her separate estate, this may be established by other evidence, and the purpose of her execution of the deed shown, upon the principle that a court of equity will look beyond the mere form and into the substance of the transaction, and give effect to the contracts of parties according to the true meaning and intent which the parties themselves understood and attached to them at the time they were made. At common law a married woman was not bound upon her contracts, and such is the law in this state except in so far as it has been modified by statute. The statute only renders her contracts valid, and she liable thereon when made with reference to her separate estate; and in states where married women have power to convey by statute, but no power to enter into contracts or covenants, covenants do not create an estoppel. Wilson v. King, 23 N. J. Eq. 150.

In the case at bar Mary Burns had a present vested estate at the time of executing the mortgage in question, and under the Nebraska statute she was sui juris as to her own separate estate, and could contract with reference thereto the same as though she were single. So, in this state, when a married woman enters into a contract of conveyance of real estate in which she has a present vested interest, I think she is liable upon such contract the same as if she were sole, all disability as to her right to contract with reference thereto being removed. In this case I think the respondent, Mary Burns, estopped from asserting that her after-acquired title to the fee did not inure to the benefit of the mortgagee, whether such estoppel be placed upon the ground of her liability upon the covenants contained in the mortgage, or upon the equitable principle that good faith and fair dealing require that a party making a conveyance should forever thereafter be precluded from gainsaying that he did not have the estate affirmed in the conveyance to be held by him, and which must have influenced the grantee in making the purchase. Real v. Hollister, 17 Neb. 661, 666, 24 N. W. 333; Van Rensselaer v. Kearney, 11 How. 297, 13 L. Ed. 703; Arthur v. Caverly, 98 Mich. 82, 56 N. W. 1102; King v. Rea, 56 Ind. 1; Yerkes v. Hadley et al. (Dak.) 40 N. W. 340, 2 L. R. A. 363; Knight v. Thayer, 125 Mass. 25; Sandwich Mfg. Co. v. Zellmar, 48 Minn. 408, 51 N. W. 379; St. Louis & S. F. R. Co. v. Foltz (C. C.) 52 Fed. 627. The after-acquired interest of Mary Burns to one-half of the estate in remainder was, however, obtained subject to a mortgage of $1,900, and the amount due thereon must be held to be a superior lien to complainant's mortgage.

Decree of foreclosure will be entered for complainant, finding his mortgage a first lien upon the life estate of Mary Burns to the land in question, and upon the undivided one-half of the estate in remainder, and a second lien upon the remaining undivided one-half of the estate in remainder, subject only to said mortgage of $1,900. In computing the amount due, complainant will be entitled to include the amount paid to redeem from tax sales. Counsel for complainant will prepare the proper decree, and submit the same to counsel for respondents before presenting the same to the court for signature.